414 A.2d 1373

COMMONWEALTH of Pennsylvania

v.

**Jack BESTWICK, Appellant.**

Supreme Court of Pennsylvania.

Argued March 7, 1980.

Decided May 30, 1980.

604

Timothy L. McNickle, McBride & McNickle, Grove City, for appellant.

David B. Douds, Asst. Dist. Atty., Mercer, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Jack Bestwick, was convicted by a jury of macing. Post-verdict motions were denied and appellant was sentenced to pay a fine of $300 and a prison term of three months to one year. The Superior Court affirmed by an equally divided court. *Commonwealth v. Bestwick*, 262 Pa.Super. 558, 396 A.2d 1311 (1978). We granted appellant's petition for allowance of appeal.

Appellant's conviction was based on the testimony of Philip Hoobler. Since 1969 or 1970, Hoobler had leased his truck to the Pennsylvania Department of Transportation in Mercer County during snow removal season. During the winter of 1972–73, Hoobler's truck was not being used for snow removal. Hoobler talked to appellant, assistant superintendent for PennDOT in Mercer County, who informed Hoobler that unless he contributed to the Democratic Party, his truck would not be used for snow removal. Hoobler sent $100 in cash to appellant on two separate occasions.

### I.

Appellant first argues that the trial court erred in refusing to grant his petition to dismiss the presentments of the Special Investigating Grand Jury and in refusing to quash the indictments because the Commonwealth's petition requesting the Investigating Grand Jury was not self-sustaining and further failed to aver sufficient facts necessary to impanel the Grand Jury. The facts are as follows.

On June 2, 1975, the District Attorney of Mercer County petitioned the Court of Common Pleas to impanel an Investigating Grand Jury to investigate allegations of macing by supervisory personnel of PennDOT. The petition stated, *inter alia*:

"Your petitioner believes that after a grand jury investigation there will be enough evidence to obtain at least one indictment on each of the above named specific offenses. In order to protect the rights of those persons

involved in the above named offenses, your petitioner has refrained from inserting names in this petition. Your petitioner is prepared, however, to present documentary evidence to the court, if the court so desires, in support of the above charged offenses. Said documents and evidence would include the names of the alleged actors and victims, as well as the facts and circumstances surrounding the commission of the offenses."

On June 3, 1975, the court, after considering the allegations of the petition, ordered an *in camera* hearing. A hearing was held the same day. The Commonwealth provided the documentation alluded to in its petition and the court ordered impanelment of the Special Investigating Grand Jury.

During the summer of 1975, the Investigating Grand Jury conducted its investigation and subsequently made presentments to the Court of Common Pleas, recommending, *inter alia*, that appellant be indicted for bribery, macing, extortion and conspiracy. Appellant then filed a petition to dismiss the presentments and a petition requesting a preliminary hearing. Both motions were denied.

Appellant was indicted in September of 1975. Appellant filed a motion to quash the indictments, alleging the same errors that were set forth in his motion to dismiss the presentments. The court denied the motion. Appellant was convicted of macing in a December, 1975 jury trial.

In *Commonwealth v. McCloskey*, 443 Pa. 117, 137 n. 26, 277 A.2d 764, 774 n. 26, *cert. denied*, 404 U.S. 1000, 92 S.Ct. at 559, 560, 563, 30 L.Ed.2d 552 (1971), we stated:

"It has been suggested that the minimum requisites for obtaining a grand jury are: (a) the subject matter of the investigation must affect members of the community as a whole, rather than as individuals; (b) the investigation must be aimed at conditions and not primarily at individuals; (c) the ordinary processes of the law must be inadequate to cope with the problems; (d) the investigation must have a defined scope, be aimed at crimes, and supported by information indicating the existence of a

system of related crimes or a widespread conspiracy; (e) information as to the crimes must come from direct knowledge or a trustworthy source."

Accord, *McNair's Petition*, 324 Pa. 48, 187 A. 498 (1936).

Appellant argues that the District Attorney's petition requesting impaneling of a Special Investigating Grand Jury was defective, thus requiring the quashing of its presentments, for the following reasons: (1) the petition failed to demonstrate that the ordinary processes of law were inadequate to cope with the situation; (2) the petition failed to allege the time and place of the specific violations of the law and the names of those involved, and (3) the petition failed to show it was aimed at conditions and not individuals. We will discuss each point *seriatim*.

The petition requesting impaneling of an investigative grand jury averred:

"The ordinary processes of law are inadequate to cope with this investigation and an investigative grand jury is necessary to procure a full and complete investigation for the following reasons:

"1. The subpoena power inherent in the grand jury process is necessary because:

"(a) Documentary evidence concerning the culmination of the above named offenses is in the possession and control of persons alleged to be involved in these offenses.

"(b) Certain individuals involved in this probe have refused to be interviewed by members of the Pennsylvania State Police.

"(c) Subpoena power if necessary to secure documents and exemplars in the possession of private contractors doing business with the Department of Transportation.

"(d) Due to the nature of the crimes and fear of reprisals, there is a general reluctance of witnesses to come forward with information.

"2. Normal investigative methods have proven ineffective. Witnesses and suspects have declined to cooperate

with the State Police or have made themselves unavailable to investigators."

■ Appellant believes that *In re: Investigation of the City of Harrisburg*, 91 Dauph. 54 (1969) supports his argument that the instant petition was defective as to the inadequacy of the normal process to deal with the problem there. The petition alleged the need for subpoena power to compel testimony and produce documents to investigate fiscal appropriation. The court held that an averment for need of subpoena power, as an abstract principle, does not demonstrate the requisite conditions. However, as stated in one law review article:

"It would seem to be the proper conclusion that where the other requisites for a grand jury investigation are present, and where the prosecuting officer is greatly handicapped in a particular investigation by the reluctance of witnesses to come forward with information, the courts should give considerable weight to this factor in determining whether to grant a petition for a grand jury investigation." Segal, Spivack & Costilo, *Obtaining A Grand Jury Investigation in Pennsylvania*, 35 Temp.L.Q. 73, 89–90 (1961) (hereinafter Segal, Spivack & Costilo).

Here, the prosecutor did more than allege an abstract need for subpoena power; he alleged, *inter alia*, that it was practically impossible to obtain the required facts because of reluctance of witnesses to cooperate with the investigation. We thus find no merit in appellant's argument.

■ Appellant next believes the petition insufficient as a matter of law because it failed to state the time and place of the violations of law and the names of those involved. The petition itself did not meet the above stated requirement. The petition, however, did state that these facts were omitted to protect the rights of the parties involved; the prosecutor was willing to provide, at an *in camera* hearing, documentary evidence in support of its allegations. Such a hearing was held where the prosecutor read into evidence signed statements of fourteen witnesses, given to investigating agents of the Pennsylvania Department of Justice,

which set forth the time and place of the specified offenses and the names of the individuals involved. After said hearing, the court granted the petition and ordered the impaneling of an Investigating Grand Jury.

Appellant relies on *In re: Grand Jury Investigation of Western State Penitentiary*, 173 Pa.Super. 197, 96 A.2d 189 (1953), where the court held, without authority, that a petition for impaneling a grand jury must be self-sustaining. As the instant petition was not self-sustaining, appellant believes the presentments of the Grand Jury must be quashed. We disagree.

As Segal, Spivack & Costilo, *supra*, at 96, have correctly, in our view, noted:[1]

"In making a determination as to whether the allegations of a petition are based on trustworthy information (and whether the court itself is sufficiently informed to be able to make such a certification) *the court is not limited to that which is presented to it by the petitioner in his memorial.* Two other possibilities exist:

"1. The court may take judicial notice of existing conditions.

"2. *The court may hold a hearing in order to ascertain if the allegations that are contained in the petition warrant investigation.*

"However, in *Dauphin County Grand Jury Investigating Proceeding (No. 2)* [332 Pa. 342, 2 A.2d 802 (1938)] and Petition of Hamilton the courts relied upon a third method to evaluate the respective petitions. In Dauphin County, the District Attorney apparently informed the court privately, and outside the record, of the circumstances he felt justified the investigation.

"The use of statements made outside the record raises great doubts as to its efficacy. These doubts are based on several reasons: such statements, being unsworn, cannot form the basis of a perjury charge; they are not subject

1. While this portion of the article deals with the trustworthy nature of the information, we find it persuasive on the question of whether a petition need be self-sustaining.

to cross-examination in those instances where there is a party opposing the granting of a petition; and a reviewing court is deprived of an adequate basis to determine whether the court has properly exercised its discretion. It is even possible that there will be unintended errors of fact, when given off the record, and that they, will go unnoticed and may lead the court to an erroneous decision." (footnote omitted.) (Emphasis added.)

Nevertheless, appellant believes the hearing held in the instant case was insufficient to supplement the petition. While appellant never had the opportunity to cross-examine the witnesses, we do not believe that fact is fatal to the Commonwealth's case; if the allegations set forth at the hearing had been included in the petition, appellant would have had no opportunity for cross-examination. Further, if a witnesses' statements had been untruthful, the witness could have been prosecuted for false reports to law enforcement authorities, a misdemeanor of the second degree. 18 Pa.C.S.A. § 4906. Finally, this court has been presented with an adequate record to review the trial court's action. We thus find no merit to this portion of appellant's argument.

■ Appellant also argues that the petition failed to show that the instant probe was aimed at conditions and not individuals. As Segal, Spivack & Costilo, *supra*, at 86, have stated:

"The mere fact that an individual is named in the petition, or even in the caption, does not automatically convert the proceeding into one aimed at an individual. The evil that the courts seeks to avoid is the investigation of individuals on allegations of ordinary crimes solely for the purpose of uncovering the wrongdoings of that person. This is a matter, it is generally held, for investigation by the police rather than by a grand jury. *But, where the acts of a named individual have a widespread impact on the community, then an investigation of those activities is in actuality an investigation aimed at conditions rather than at the individual. Therefore the real issue to be*

*decided by courts is that discussed under section I of this
article; i. e., whether the investigation is one into condi-
tions that have widespread impact on the community as a
community."* (Emphasis added.)

The instant petition contained the following allegations:

"The subject matter of this investigation affects the
community as a whole, rather than individuals, in that:

\*　　\*　　\*　　\*　　\*　　\*

"(5) The offenses alleged are the type of offenses which
undermine public confidence in governmental integrity.
The offenses alleged have received widespread news cov-
erage in the county and state level and there is a wide-
spread belief by the public that the offenses have oc-
curred.

and

"The investigation conducted by your petitioner is
aimed at conditions and not primarily at individuals. The
alleged wrongdoing in the offenses cited in this petition is
not that of a particular individual, but rather that of a
group of supervisory personnel, ranking officers of politi-
cal parties, over an extended period of time."

We believe the allegations are sufficient to overcome appel-
lant's objections. As we believe the instant petition con-
tained facts, along with those adduced at the hearing, which
allowed the court to order impaneling of a Grand Jury,
appellant's arguments that the presentment should have
been dismissed and the indictments should have been
quashed are without merit.

## II.

■ Appellant next argues that the trial court erred in
failing to grant him a preliminary hearing and in failing to
quash the indictments for lack of a preliminary hearing. As
we do not believe appellant was entitled to a preliminary
hearing, we find no merit to appellant's arguments.

In *Commonwealth v. McCloskey, supra,* 443 Pa. at 140, 277
A.2d at 776, we held that: "an investigating grand jury

presentment is a constitutionally permissible and reasonable alternative to a preliminary hearing. See also, *Commonwealth v. Columbia Investment Corp.*, 457 Pa. 353, 325 A.2d 289 (1974). Appellant recognizes that *McCloskey* is still the law, but argues that it should be reconsidered in light of Judge Spaeth's concurring and dissenting opinion in *Commonwealth v. Levinson*, 239 Pa.Super. 387, 362 A.2d 1080 (1976), and the California Supreme Court's decision in *Hawkins v. Superior Court*, 22 Cal.3d 584, 150 Cal.Rptr. 435, 586 P.2d 916 (1978). Our review of these cases convinces us that reconsideration of *McCloskey* is unnecessary.[2]

In his separate opinion in *Commonwealth v. Levinson, supra*, Judge Spaeth referred to two recent developments which led him to believe *McCloskey* should be reconsidered. In *Commonwealth v. Webster*, 462 Pa. 125, 337 A.2d 914 (1975), we were presented with a constitutional challenge, on equal protection grounds, to the local option permitting counties to abolish the indicting grand jury and to initiate prosecutions by information. We held that the procedure was not violative of equal protection for two reasons. As Mr. Justice Roberts stated: " . . . No aspect of the operation and procedures of an indicting grand jury works to the advantage or protection of the accused." *Id.*, 462 Pa. at 131, 337 A.2d at 917. We further noted that irrespective of which method was used, the accused was entitled, under most circumstances, to a preliminary hearing. It is this second aspect which troubled Judge Spaeth, for he stated:

"This emphasis, in my judgment, is inconsistent with the conclusion in *McCloskey* and [*Commonwealth v. Columbia Investment Corp.*, 457 Pa. 353, 325 A.2d 289 (1974)]

**2.** Under the Investigating Grand Jury Act, Act of November 22, 1978, P.L. 1148, No. 271, § 1, et seq., 19 P.S. § 265, et seq. (Supp. 1979–80), the instant controversy has been settled by the legislature. By the Act of July 20, 1979, Act No. 1979–50, Section 10.1 (eff. immediately), the legislature has provided:

"When the attorney for the Commonwealth proceeds on the basis of a presentment, a complaint shall be filed and the defendant shall be entitled to a preliminary hearing as in other criminal cases."

This act, of course, is inapplicable to the instant case.

that a presentment is the equivalent to a preliminary hearing. I submit that it is not. As Mr. Justice Mosk, joined by Chief Justice Wright, observed in advocating that all persons accused of crime in California be afforded a post-indictment preliminary hearing, the preliminary hearing is the forum 'which will permit the development not only of affirmative exculpatory evidence but also evidence gleaned from adequate cross-examination and confrontation of the state's witnesses.' *Johnson v. Superior Court* [15 Cal.3d 248, 269, 124 Cal.Rptr. 32, 46, 539 P.2d 792, 806 (1975)]." *Commonwealth v. Levinson, supra,* 239 Pa.Super. at 409, 362 A.2d at 1092.

As we stated, however, in *Commonwealth v. McCloskey, supra,* 443 Pa. at 138, 277 A.2d at 775:

". . . In *Commonwealth v. Dessus,* 423 Pa. 177, 181, 224 A.2d 188, 191 (1966), we held that an indictment based solely on hearsay testimony was valid. That being the case, an accused's opportunity to cross-examine at a preliminary hearing is severely restricted. We believe that the policy considerations justifying the impaneling of a special investigating grand jury when ordinary law enforcement procedures are no longer capable of dealing with the problem as outlined above justifies this 'curtailment', if indeed it is one, of an accused's cross-examination opportunity. Cf. *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970)."

Further, in *McCloskey,* we analyzed the safeguard given an accused at a preliminary hearing and found no significant disparity with regard to those safeguards between proceedings in which a preliminary hearing was held and proceedings initiated by an investigating grand jury.

We further noted:

"It has been urged by various appellees that the proper procedure required by both the criminal rules and considerations of equal protection is that subsequent to the investigating grand jury presentment, a complaint should be issued and preliminary hearing held before the matter is submitted to an indicting grand jury. To accede to

appellee's request would merely be subjecting the administration of criminal justice to another superfluous layer of delay and imposing an unwise burden upon our judicial process as well as upon the prosecutor and counsel for the defense with only a slight expectation for what at most would be a highly speculative de minimis advantage to an accused." *Commonwealth v. McCloskey, supra*, 443 Pa. at 139, 277 A.2d at 775.

In *Commonwealth v. Levinson, supra*, 239 Pa.Super. at 409–10, 362 A.2d at 1092, Judge Spaeth stated: "The elimination, in Philadelphia and other counties, of the Indicting Grand Jury eliminates the 'layer of delay' remarked upon in *McCloskey*". Suffice it to say that in the instant case, Mercer County was still using the Indicting Grand Jury.

In *Hawkins v. Superior Court, supra*, the California Supreme Court held that the Equal Protection Clause of the California Constitution required that all defendants be given a preliminary hearing. Under prior law, a distinction existed between a defendant whose case was initiated by way of indictment as opposed to the issuance of an information. Only those defendants in the latter case were entitled to a preliminary hearing. In California, however, the prosecutor has the absolute discretion to choose by which method he will proceed. In contrast, Special Investigating Grand Juries may be impaneled only in very limited circumstances in this Commonwealth. Furthermore, the California Court employed a strict scrutiny equal protection analysis, holding that the denial of a preliminary hearing amounted to the denial of a fundamental right. In *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), the Supreme Court did not decide an accused had a right to a preliminary hearing; rather, they held that when such a hearing was held, the accused was entitled to the assistance of counsel.

For all of the above stated reasons, we are not persuaded that these recent developments require us to reconsider our holding in *Commonwealth v. McCloskey, supra*. As we believe *McCloskey* is still viable, appellant's arguments must be rejected. See also, *Commonwealth v. Columbia Investment Corp., supra*.

## III.

 Appellant next asserts that the trial court erred in refusing his motion to quash the indictments as beyond the Statute of Limitations. The applicable Statute of Limitations provided:

"[I]ndictments for malfeasance, misfeasance, or nonfeasance in office, or for extortion or blackmail by color of office, or for embezzlement of public moneys or property or fraudulent conversion of public moneys or property, or *for any misdemeanor in office,* or for any conspiracy to commit any of said offenses heretofore or hereafter *committed by any officer or employe of this Commonwealth or of any agency thereof,* or of any city, county, borough, township, or school district or of any agency thereof, and their accomplices and confederates, *may be brought or exhibited at any time within two years from the time when said public officer or said employe shall have ceased to occupy such office or such employment, but in no event more than six years from the commission of the offense."* Act of March 31, 1860, P.L. 427, § 77, as amended, 19 P.S. § 211 (Emphasis added.)

At trial, appellant admitted that he was still employed by PennDOT. Further, as the instant crimes were committed from 1970 on and the instant indictments were brought in 1975, appellant's argument is without merit.

## IV.

 Appellant also asserts that the trial court erred in permitting Philip Hoobler to testify as to the "gist" of his conversation with appellant. The following exchange occurred during direct examination of Hoobler:

"Q. Do you remember what you said to him [Appellant Bestwick], if anything?

"A. I believe it was along the same words that I said to Mr. Harpst.

"Q. What was the gist, or what do you recollect of your conversation with Mr. Bestwick?

"A. I just talked in common words, and I said, hey, my truck needs some work. I got to work it someplace this winter.

"Q. Did Mr. Bestwick make any reply to you?

"A. Yes, there was a reply.

"Q. What was the reply, if you recall?

"A. I'm not sure of the exact words that were used except the phrase came up that, it's either, you know how it is, or that's how it is.

"Q. Do you remember anything else about the conversation, or anything else that was said?

"A. I don't remember the exact words said, no.

"Q. Do you remember the gist of the conversation?

"A. This was about snow removal for the truck. And from the conversation, I knew that if I was going to have work this truck—

"[Defense Counsel]: Now I object—

"The Court: *There is a distinction, Mr. Hoobler, between testifying as to what the gist of the conversation was and what you interpreted it to mean. Could you just state, not the exact words because, you say, you don't recall them, but what in substance was said by Mr. Bestwick and by you?*

"A. I was talking strictly about the truck for snow removal and I knew from previous conversations with previous individuals—

 . . . . .

"[Defense Counsel]: Object.

"[Defense Counsel]: It's obvious he's going to state hearsay. He's talking about—

"The Court: Well, he hasn't said what he knew—

"[Defense Counsel]: Well, I understand that—

"The Court: . . . he's talking about previous contact with other individuals.

"[Defense Counsel]: I'm sorry, it's too late after he's said it, unless he is going to talk about one of these two defendants here, it's going to be hearsay.

"The Court: Well, I don't know what his answer is going to be. The fact that he has said he had previous information from other individuals isn't objectionable as long as he doesn't testify what the information is. All right now, we're not interested in what information you got from other individuals. What we're interested in is, what conversation you had with Mr. Bestwick, the gist of it, to the best of your recollection.

"A. *The gist of the conversation was, if I paid some money my truck would work.*

"[Defense Counsel]: Now I object and move to strike. I believe what he said was, the gist of the conversation was that, and that could be a conclusion that he drew or an inference that he drew.

"The Court: All right, well, let's clear that up. *Did Mr. Bestwick tell you that if you paid some money your truck would work?*

"A. *I don't know if that's the exact words he used but this is where this phrase came out, that's how it is.*

"Q. Do you recall any other part of the conversation?

"A. No." (N.T. 140–43) (Emphasis added.)

Appellant argues that Hoobler's testimony invaded the province of the factfinder. We disagree.

Our review of this exchange convinces us that the testimony was properly admitted. The trial court directed that the witness testify only as to his recollection of the conversation. As Hoobler testified that he could not remember appellant's exact words, we can perceive no error in allowing him to testify as to his recollection of the conversation. Further, on cross-examination, the following exchange occurred:

"Q. Your second contribution, you said, was around the same, about 100 or $150.?

"A. Yes.

"Q. Was it made later in the same winter?

"A. In the same season.

"Q. The same season?

"A. Yes . . . yes.

"Q. *There was never any request for that contribution, was there?*

"A. *Yes, I had been asked if I was going to give a little more.*

"Q. *By whom?*

"A. *Mr. Bestwick.*" (Emphasis added.)

Hoobler also testified that after making his first contribution, his truck was called out at the next snow, evidencing that his recollection of the conversation was correct. We find no merit in appellant's argument.

■ Appellant finally complains that the evidence was insufficient to sustain his conviction for macing. The legislature has provided:

"It shall be unlawful for any political committee or any member, employe or agent thereof, or for any public officer or employe, or any other person whatsoever, directly or indirectly, to demand from any public officer, subordinate or employe holding any office or position of honor, trust or profit under this Commonwealth, or otherwise engaged or employed in the service of the Commonwealth, or employed by, or in any way engaged in the service of, any political subdivision, or from any person receiving any public assistance whatsoever from the Commonwealth or the United States, directly or through employment on public works, or any person, association or corporation desiring or having a contract with, or a certificate, license or permit from, the Commonwealth or any political subdivision, any assessment or percentage of any money or profit, or their equivalent in any thing of value, with the understanding, express or implied, that the same may be used or shall be used for political purposes: Provided, however, That nothing in this act contained shall be construed to prohibit voluntary contributions to any political committee or organization for legitimate political and campaign purposes to the extent such contributions are not prohibited by law." Act of April 6, 1939, P.L. 16, § 1, 25 P.S. § 2374.

620

In addition to the testimony previously referred to, Hoobler also testified that when he was first approached, he was asked to "contribute" money to the Democratic Party. We thus find more than sufficient evidence to support appellant's conviction.

Order of the Superior Court affirmed.