415 A.2d 61

COMMONWEALTH of Pennsylvania,

v.

Joseph P. IACINO, Appellant.

Supreme Court of Pennsylvania.

Argued March 7, 1980.

Decided May 30, 1980.

Charles F. Gilchrest, Routman, Moore, Goldstone & Valentino, Sharon, for appellant.

Samuel J. Orr, IV, Dist. Atty., David B. Douds, Asst. Dist. Atty., Mercer, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

 

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Joseph P. Iacino, was convicted by a jury of misapplication of entrusted property and conspiracy. Post-verdict motions were denied and appellant was ordered to pay fines totaling $1,000 and sentenced to a prison term of eleven and one-half to twenty-three months. The Superior Court affirmed, *Commonwealth v. Iacino*, 265 Pa.Super. 375, 401 A.2d 1355 (1979), and we granted appellant's petition for allowance of appeal.

Appellant's conviction was based on the disappearance of a high-lift owned by the Pennsylvania Department of Transportation (PennDOT). At the time of the disappearance, appellant was employed as a maintenance supervisor for PennDOT in Mercer County. Appellant was charged with improperly causing the sale of the high-lift and conspiring with three other individuals.[1]

The instant prosecution was initiated by way of present-ments issued by a special investigating grand jury impan-eled to investigate a widespread series of crimes by supervi-sory personnel of PennDOT in Mercer County. The same grand jury was involved in the cases, decided today, of *Commonwealth v. Bestwick*, 489 Pa. 603, 414 A.2d 1373 (1980), and *Commonwealth v. Skarica*, 489 Pa. 636, 414 A.2d 1390 (1980). Consequently, a number of appellant's allega-tions of error can be disposed of on the basis of *Bestwick, supra.*

■ Appellant first argues that the indictments should have been quashed because of the failure to afford him a preliminary hearing. We decided this issue adversely to appellant in Part II of *Commonwealth v. Bestwick, supra,* and we thus find this allegation of error meritless.

Appellant asserts that the indictments should have been quashed because the district attorney's petition for an inves-

1. Two co-defendants were acquitted of all charges while the third, Joseph Fontana, was convicted of misapplication of entrusted prop-erty, theft by receiving stolen property, tampering with a witness and conspiracy. We recently, however, granted Fontana a new trial. *Commonwealth v. Fontana*, 490 Pa. 7, 415 A.2d 4 (1980).

tigative grand jury was insufficient as a matter of law to justify impanelment of the grand jury. As a corollary, appellant argues that the insufficient written petition could not legally be supplemented by the presentation of evidence at the *in camera* hearing. We find both arguments without merit. *Commonwealth v. Bestwick, id.* (Part I).

Appellant next argues that the court order authorizing the grand jury investigation did not limit the scope of the investigation with sufficient definiteness and precision and thus authorized an investigation broader in scope than requested in the petition for an investigative grand jury. As a necessary corollary, appellant alleges that the investigative grand jury unlawfully exceeded its lawful scope of inquiry by investigating the disappearance of the high-lift. As authority for both arguments, appellant cites *Commonwealth v. Soloff*, 175 Pa.Super. 423, 107 A.2d 179 (1954), where the court held that an indictment may be challenged because the investigative grand jury's investigation went beyond the scope of the petition seeking impanelment of said grand jury. That petition alleged:

"... [T]hat there existed widespread conspiracies to cheat and defraud the City of Pittsburgh of its properties, supplies and labor; that certain city officials had received money, property and other valuable things to influence their official conduct; that city officials and employes had failed to comply with certain statutes relating to the awarding of contracts; that gambling establishments, lotteries and houses of prostitution operated with the wilful, knowing and corrupt connivance of public officials and employes of the City of Pittsburg and Allegheny County, and that said officials and employes had accepted bribes for permitting such illegal operations." *Id.*, 175 Pa.Super. at 425, 107 A.2d at 179–80.

The defendants in *Soloff* were city policemen charged with acts of police brutality. The court stated:

"We think it clear that the matters of public concern which the Attorney General alleged in his petition and which the grand jury was summoned to investigate did not include an isolated instance of overzealous law en-

forcement or police brutality. On the contrary, the conclusion is inescapable that the Attorney General sought to unearth evidence indicating that the Pittsburgh police and public officials protected criminals for financial gain." Ibid., 175 Pa.Super. at 427, 107 A.2d at 180.

We believe *Soloff* is distinguishable from the instant controversy.

The petition seeking impanelment of the instant grand jury alleged:

"1. *Supervisory personnel* have extorted political assessments from persons seeking contracts with the Pennsylvania Department of Transportation. Specifically, there is evidence that one or more private operators of snow removal equipment have been required to pay $100.00 in order to lease equipment to the Commonwealth. Said acts being in violation of 'An Act to Prohibit Assessments and Demands for Contributions for Political Purposes; and Providing a penalty, 1939, April 6, P.L. 16, 25 P.S. § 2374 and § 3023 of the Crimes Code of the Commonwealth of Pennsylvania.'

"2. *Supervisory personnel* of the Mercer County Pennsylvania Department of Transportation, District 1–4, have, on a systematic basis, required lessors of equipment to Pennsylvania Department of Transportation to make cash payments based on a percentage of the earnings from the state. All of which is in violation of the Crimes Code section cited in # 1, above.

"3. Certain individuals, *with the aid and assistance of supervisory personnel* of Pennsylvania Department of Transportation, District 1–4, have formed a paper corporation and were paid for work that was never performed, said offenses being in violation of 18 P.S. § 4836 and § 3922 of the new Crimes Code of Pennsylvania.

"4. The evidence concerning the above specific crimes would indicate that these are not isolated incidents but rather are part of a *widespread and systematic scheme by which a large number of persons have conspired to obtain money and property for themselves and/or the Democratic Party.* All of which is in violation of Section 903 of the

Crimes Code of Pennsylvania, and 18 P.S. § 4302 of the prior Crimes Code of Pennsylvania." (Emphasis added.) The petition further alleged:

"The scope of the grand jury investigation requested by your petitioner would include the specific crimes alleged in this petition which are supported by information gathered by the 'Gleason Committee' and other legislative and executive committees and departments. Said information indicates the *existence of a system of related crimes and a conspiracy to cover up said crimes.*" (Emphasis added.)

The court's order granting the district attorney's petition stated:

". . . The grand jury investigation is necessary to discover what may be criminal acts which seriously affect and injure the public and to obtain evidence leading to the indictment and prosecution of persons who have committed specific crimes within the statutory period and within the jurisdiction of the court. *Such crimes may include the illegal solicitation of political contributions from persons and corporations desiring to have contracts within the Commonwealth and by private persons through collaboration with government employees, to obtain by theft and deception public monies, and similar or related crimes involving official corruption.* There is reasonable cause to believe that a grand jury investigation will result in the discovery of such offenses and the issuance of indictments." (Emphasis added.)

■ In the instant case, the petition requesting impanelment of the investigative grand jury sought to uncover, *inter alia,* crimes involving official corruption by supervisory personnel of PennDOT in Mercer County whereby those individuals received monetary gain for either themselves or their political party. Furthermore, the order which impaneled the grand jury was of similar scope. Finally, the grand jury's investigation into the disappearance of the high-lift was proper, as the sale of the high-lift was made possible because appellant had submitted false reports to authorities in Harrisburg, alleging that the high-lift had been disman-

tled. The instant case thus differs from *Soloff,* where that grand jury investigated a single instance of police brutality where the scope of the investigation was aimed at the protection of criminals by public officials for financial gain. As we stated in *Commonwealth v. Columbia Investment Corp.,* 457 Pa. 353, 369, 325 A.2d 289, 298 (1974):

> "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. As has been said before, the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning." (Citations omitted.)

We thus reject appellant's arguments.

■ Along the same line of inquiry, appellant asserts that the court below erred in refusing his request for an evidentiary hearing into the investigative process used by the grand jury. Appellant claims that the disappearance of the high-lift could have been investigated by normal police methods. As we find that the grand jury's investigation into the instant crime was proper, we believe the court did not err in refusing appellant's request for an evidentiary hearing.

■ Finally, appellant asserts that the trial court erred in refusing to sever his trial from the trials of his co-defendants. In essence, he argues that he was prejudiced because the case was so strong against co-defendant Fontana that the jury could not keep the evidence separate. Appellant further argues that since Fontana was prejudiced by the conduct of his attorney, *Commonwealth v. Fontana, supra,* he (appellant) was also prejudiced.

As we stated in *Commonwealth v. Tolassi,* 489 Pa. 502, 413 A.2d 1003 (1980):

> "The decision whether to sever cases against co-defendants is one within the sound discretion of the trial court.

*Commonwealth v. Kloiber*, 378 Pa. 412, 106 A.2d 820 (1954), *cert. denied*, 348 U.S. 875, 75 S.Ct. 112[, 99 L.Ed. 688] (1954); Pa.R.Crim.P. 219. Such a decision will be reversed only where there has been a manifest abuse of that discretion. *Commonwealth v. Lasch*, 464 Pa. 573, 347 A.2d 690 (1976) (opinion in support of affirmance); *Commonwealth v. Patrick*, 416 Pa. 437, 206 A.2d 295, appeal after remand 424 Pa. 380, 227 A.2d 849 (1965). And the critical factor in one analysis is the prejudice which inures to the accused as a result of the trial court's determination. *Commonwealth v. Peterson*, 453 Pa. 187, 194, 307 A.2d [264], 267 (1973); *Commonwealth v. Lasch, supra*, 464 Pa. at 584–585[, 347 A.2d 690]." *Commonwealth v. Tolassi, supra*, 489 Pa. at 509, 413 A.2d at 1007.

The jury verdict in the instant case shows that appellant was not prejudiced in the way he asserts, i. e., that the jury confused evidence presented against his co-defendants with the evidence presented against him. The instant jury acquitted two co-defendants of all charges. Fontana was convicted of four of the five charges while appellant was convicted of two of the five charges. As the jury was able to sift through the evidence before it, appellant's claim of prejudice is without merit.

Order of the Superior Court is affirmed.