626 A.2d 575

COMMONWEALTH of Pennsylvania

v.

**Michael HLATKY, Appellant.**

Superior Court of Pennsylvania.

Argued March 9, 1993.

Filed May 25, 1993.

68

70

Dwight L. Danser, Easton, for appellant.

Victoria Coyle, Asst. Dist. Atty., Bethlehem, for Com., appellee.

Before CAVANAUGH, JOHNSON and HOFFMAN, JJ.

JOHNSON, Judge:

Michael Hlatky appeals from the judgment of sentence entered following his conviction by a jury on charges of aggravated assault, recklessly endangering another person, and false reports to police. We affirm.

On September 22, 1989, Officer Sean Stuber arrived at the residence of Michael and Augusta Hlatky, in response to a call for an ambulance to assist an injured child. Upon arrival at the Hlatky residence, the officer was greeted by Augusta Hlatky who showed him where four year old Angela Lane was lying unconscious, and without spontaneous respirations. Augusta Hlatky informed the officer that Angela had fallen from a tree, thereby sustaining her injuries. The officer immediately administered cardio-pulmonary resuscitation to the child. While administering emergency treatment, Officer Stuber noted that there were multiple bruises on the child's face, head and other areas of her body. He also noticed burn marks on the child's hand and foot. Emergency personnel arrived on the scene a short while later and Angela was taken to the hospital for further treatment.

Officer Stuber, along with Chief Harry Brown, then proceeded to question the adults on the scene, Michael and Augusta Hlatky and their sister-in-law, Melody Hlatky who was the aunt and temporary custodian of Angela. These individuals were questioned together and each one indicated that Angela had fallen from a tree, had entered the residence mumbling, "I fell, I fell," gave a loud scream and became unconscious.

On September 25, 1989, three days after Angela had sustained her injuries, Augusta, Michael, and Melody Hlatky arrived at the police station at 2:35 a.m. to speak with Chief Brown about Angela. After being given *Miranda* warnings, Michael, Augusta, and Melody Hlatky gave statements to the police. Following statements in which they admitted inflicting previous injuries upon Angela unrelated to the present incident, both Melody and Augusta Hlatky were arrested and charged with attempted homicide, aggravated assault and other charges. Michael Hlatky was also arrested, based on Melody Hlatky's statement which implicated him as the perpetrator of the abuse upon Angela during the incident in question.

Michael Hlatky has maintained that he was "play wrestling" with Angela when she fell toward him, hitting her head on a

chair. He stated that the child then bounced backward striking her head on the floor at which time she stopped breathing. Melody Hlatky, however, testified to a different version of the events leading to Angela's injuries. Melody testified that Michael: tripped Angela with his foot several times, causing her to fall to the floor; struck the child on the back five or six times; picked her up by the back of her shirt, raised her to shoulder height and dropped her, causing her to hit the floor face first. Melody further testified that when Angela got up, Michael tripped her once again causing her to hit a chair with her face and fall backward onto the floor. The child then turned over, screamed, and fell into unconsciousness.

Expert testimony by Angela's first treating physician, Dr. Michael Rhodes, established that Angela suffered brain damage due to oxygen deprivation. Testimony by a forensic pathologist established that Angela's injuries were the result of severe trauma to the brain and were inconsistent with a play type of injury. Angela suffered permanent brain damage and remained in a coma at the time of trial.

Following a jury trial on charges of attempted homicide, aggravated assault, recklessly endangering another person, and false reports to law enforcement officers, Hlatky was found not guilty of attempted homicide and guilty of all other charges. Post-trial motions were denied. Hlatky was then sentenced to a term of imprisonment of 75 months to 20 years on the aggravated assault conviction and a 1–2 year consecutive term of imprisonment on the false reports to law enforcement officers conviction. Following the denial of his Motion for the Reconsideration of Sentence, Hlatky appeals to this Court.

Hlatky presents six issues for our review, asking whether:

1. the trial court unduly interfered with Hlatky's selection of defense counsel;

2. the verdict is against the weight of the evidence, due to the conflicting evidence presented during the Commonwealth's case;

3. the evidence is insufficient to support the conviction of aggravated assault;

4. the evidence is insufficient to support the conviction on the charge of giving false reports to law enforcement authorities;

5. the trial court erred in permitting the Commonwealth to question Augusta Hlatky concerning the circumstances surrounding her separation from Michael Hlatky; and

6. the sentence imposed was excessive and harsh constituting a manifest abuse of discretion on the part of the trial court.

■ First, Hlatky contends that the trial court unduly interfered with his selection of counsel because the court denied Hlatky's request to have defense counsel for his wife sit and assist his defense counsel during trial. The trial court ruled that there was an inherent conflict of interest between Michael and Augusta Hlatky since Augusta had pled guilty to aggravated assault upon the same child, who was the alleged victim of Michael Hlatky's assault. At the time of Hlatky's trial, Augusta Hlatky had yet to be sentenced and her guilty plea was still subject to withdrawal.

■ The right to counsel of choice, while not absolute, is guarded by the sixth amendment of the United States Constitution. *Commonwealth v. Coffey*, 415 Pa.Super. 131, 608 A.2d 560 (1992). When a defendant's selection of counsel, under the particular facts and circumstances of a case, places the fairness and integrity of the defendant's trial in jeopardy, the defendant's right to counsel of choice may justifiably be denied. *Commonwealth v. Cassidy*, 390 Pa.Super. 359, 368, 568 A.2d 693, 697 (1989), *appeal denied*, 525 Pa. 641, 581 A.2d 567 (1990). However, a presumption must first be recognized in favor of the defendant's counsel of choice; to overcome the presumption, there must be a demonstration of an actual conflict or a showing of a serious potential for conflict. *Id.* at 369, 568 A.2d at 698.

In the present case, the trial court did not interfere with Hlatky's choice of his primary defense counsel but, rather,

refused to allow counsel for Hlatky's wife to sit and assist Hlatky's chosen counsel. The trial court articulated the reasoning behind its refusal to permit counsel for Hlatky's wife to assist his primary defense counsel:

> THE COURT: ... I am ruling that you are in direct conflict with your wife. Your interests and your wife's interests are directly in conflict here. What your wife is subject to by way of jeopardy from sentence in regard to the plea of nolo contedere [sic] may depend upon her testimony in this case possibly against you.
>
> Whether she will testify for or against you, I don't know. But we are not going to permit anyone to be involved in your defense who might have a higher obligation to your wife at the risk of your later claiming, even though you would now waive it, that your counsel may have been ineffective because he acted in part or in any way upon advice of your wife's counsel.

N.T., March 2, 1992, at 97–98. The trial court further found that Hlatky's primary defense counsel was competent and adequately prepared to fully defend Hlatky throughout the trial and Hlatky would suffer no prejudice from the court's refusal to allow counsel for Hlatky's wife to assist primary defense counsel.

While Hlatky frames this issue in terms of the trial court's interference with his right to choose his own counsel, Hlatky cites to no authority, and we find none, under which a defendant has a right to have a co-defendant's counsel of choice present for his defense in addition to his own selected counsel. Additionally, Hlatky alleges no prejudice suffered from the trial court's ruling. In light of the conflict of interest, or at least the serious potential for a conflict of interest, presented by the divergent interests of Michael and Augusta Hlatky and their respective counsel in this case, we are unable to find error in the trial court's ruling on this issue.

■ Second, Hlatky contends the verdict was against the weight of the evidence due to the conflicting evidence present-

ed by the Commonwealth. We find no merit in this contention.

When assessing whether a verdict is against the weight of the evidence our scope of review is quite narrow. *Commonwealth v. Rochon,* 398 Pa.Super. 494, 581 A.2d 239 (1990). In order to hold that a verdict was against the weight of the evidence, it must be clear from the record that the verdict shocks this Court's sense of justice. *Commonwealth v. Allen,* 394 Pa.Super. 127, 575 A.2d 131 (1990), *appeal denied,* 526 Pa. 627, 584 A.2d 311 (1990). Where the evidence is conflicting, it is the province of the fact finder to determine credibility; it is the prerogative of the fact finder to believe all, part or none of the evidence presented. *Commonwealth v. Earnest,* 386 Pa.Super. 461, 563 A.2d 158 (1989). The determination of whether to grant a new trial because the verdict is against the weight of the evidence rests within the discretion of the trial court and we will not disturb that decision absent an abuse of discretion. *Commonwealth v. Pirela,* 398 Pa.Super. 76, 580 A.2d 848 (1990), *appeal denied,* 527 Pa. 672, 594 A.2d 658 (1991).

We recognize that a verdict of guilt may never be based on surmise and conjecture. *Commonwealth v. Smith,* 502 Pa. 600, 467 A.2d 1120 (1983). However, the mere existence of a conflict in the evidence does not mean the trier of fact was required to resort to speculation. *Commonwealth v. Gonzalez,* 325 Pa.Super. 371, 472 A.2d 1389 (1984).

In the present case, Hlatky contends that the inconsistencies between the testimony of the two Commonwealth expert witnesses as to the cause of the child's comatose condition renders the jury's verdict the product of mere speculation and surmise and requires reversal. We are unable to agree.

Two physicians were presented as expert witnesses in this case, Dr. Rhodes was the treating physician after the child's arrival in the emergency room. Dr. Isadore Mihalikis is a forensic pathologist who was consulted to examine the child and give his opinion as to the causation of her condition. Both physicians agreed that the child's coma was caused by an

acute injury to the brain resulting in oxygen deprivation to that organ. While minor inconsistencies did occur in the testimony of the two physicians, those inconsistencies were for the fact finder to resolve. After a thorough review of the record, we conclude that the inconsistencies in the expert testimony did not render that testimony so unreliable that a jury could not have resolved those inconsistencies to reach the verdict rendered in this case. We, therefore, reject Hlatky's second allegation of error.

■■■ Third, Hlatky alleges that there is insufficient evidence to support his conviction on the charge of aggravated assault. Hlatky contends that the Commonwealth failed to prove that he acted with the required intent in his interaction with Angela.

■■■ The standard of review applied to determine whether the evidence introduced at trial is sufficient to sustain a conviction is whether, viewing all the evidence introduced at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offense charged was supported by evidence and inference sufficient in law to prove guilt beyond a reasonable doubt. *Commonwealth v. Tau Kappa Epsilon*, 530 Pa. 416, 419, 609 A.2d 791, 793 (1992). We will review Hlatky's claim in light of this standard.

The crime of aggravated assault, for which Hlatky was convicted, is defined at 18 Pa.C.S. § 2702(a)(1). This statute states in pertinent part:

(a) **Offense defined.**—A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

■■■ Where serious bodily injury is inflicted, the Commonwealth is not required to prove a specific intent; this is because aggravated assault may be proven if the defendant

■■■■■■■■■■■■■■■

acted recklessly. *Commonwealth v. Magnelli*, 348 Pa.Super. 345, 502 A.2d 241 (1985). Since the fact that Angela sustained serious injury is not contested in this case, the Commonwealth had the burden of proving that Hlatky acted recklessly under circumstances manifesting an extreme indifference to the value of human life. We conclude that the Commonwealth sustained this burden.

Reckless is defined at 18 Pa.C.S. § 302(b)(3) as:

(3) A person acts recklessly with respect to a material element. of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

A review of the record reveals the reckless nature of Hlatky's actions. Testimony at trial established that, contrary to his assertions, Hlatky was not playing with Angela, but was striking her violently and with anger. Hlatky repeatedly tripped Angela and struck her in the torso area. He then lifted Angela to shoulder height and dropped her causing her to fall on her face. When Angela was able to get up from this fall, Hlatky kicked her feet out from under her. This final act caused Angela to fall violently, strike her head on a chair, and be rendered unconscious.

■■■ Hlatky maintains that there is no evidence that he intended Angela to strike her head or sustain injury. Intent on Hlatky's part to cause the specific injury sustained by the child is not necessary. *Commonwealth v. Scofield*, 360 Pa.Super. 552, 521 A.2d 40 (1987), *appeal denied*, 517 Pa. 593, 535 A.2d 82 (1987). It is sufficient that Hlatky acted with conscious disregard of a substantial and unjustifiable risk to the child and that his actions deviated from the standard of conduct that a reasonable person would observe in that situation. The record provides ample support that Hlatky acted in

such a way. We, therefore, find Hlatky's third claim to be meritless.

■ Fourth, Hlatky contends that the evidence is insufficient to support his conviction on the charge of false reports to law enforcement authorities. We will review the evidence in the light most favorable to the Commonwealth as verdict winner, giving the Commonwealth the benefit of all reasonable inferences therefrom, to determine if the evidence is sufficient to establish every element of the crime beyond a reasonable doubt. *Commonwealth v. Tau Kappa Epsilon, supra.*

False reports to law enforcement authorities is defined at 18 Pa.C.S. § 4906(b)(1) as:

> **(b) Fictitious reports.**—A person commits a misdemeanor of the third degree if he:
>
> (1) reports to law enforcement authorities an offense or other incident within their concern knowing that it did not occur;

In this case, when Hlatky was questioned by Officer Stuber regarding the cause of Angela's injuries, Hlatky stated that the child had fallen out of a tree. Hlatky contends that since his false statement to the police was not volunteered but made in response to questioning, it cannot constitute a false report. We disagree.

The statute does not differentiate between false reports of an incident given by an individual in response to police questioning from those spontaneously given without police inquiry. Our supreme court, while not ruling on the sufficiency of the evidence to uphold a conviction of false reports to law enforcement officials, did describe circumstances under which an individual might be charged with this offense in *Commonwealth v. Bestwick*, 489 Pa. 603, 414 A.2d 1373 (1980). In that case, the defendant objected to the convening of a grand jury to investigate his case rather than affording the defendant a preliminary hearing at which he could cross-examine witnesses. There, the court found no merit in the defendant's argument stating that if witnesses at the grand jury hearings had answered the district attorney's questions untruthfully,

they could have been prosecuted for false reports to law enforcement authorities under 18 Pa.C.S. § 4906. *Id.* at 611, 414 A.2d at 1376–1377.

There, the court clearly stated that if false answers are given in response to questioning from law enforcement officials, the charge of false reports will stand. It is exactly that factual scenario which is before us in the present case. Officer Stuber, upon arriving at the Hlatky residence, asked Hlatky what had caused the child's condition. The officer specifically stated that he wanted to relay that information to paramedics and doctors who would be treating Angela's injuries. In light of this knowledge, and his knowledge of the true nature of the incident causing the child to be rendered unconscious, Hlatky answered falsely. We are unable to conclude that the evidence presented to the jury of Hlatky's responses to police questioning was insufficient to have permitted them to return a verdict of guilty on the charge of false reports to law enforcement authorities.

■ Fifth, Hlatky asserts in an unsupported argument that the trial court erred in permitting the Commonwealth to question Augusta Hlatky regarding her possible bias during her testimony on behalf of the defense. We find no error.

At trial, Augusta Hlatky testified on behalf of her husband. On cross-examination, the following exchange took place:

Q As a result of these charges, your family has been markedly disrupted, isn't that true?

A What do you mean?

Q I mean Michael is no longer in your home, isn't that correct?

A That's correct.

Q Isn't it a fact, ma'am, that you would say anything, notwithstanding your oath, to protect your family and get him back into your home?

A What did you mean?

Q I mean you have taken an oath to tell the truth?

A Right.

Q Do you understand that?

A Yes.

Q Isn't it a fact that you would say anything to this jury, notwithstanding whether it was true or not, just to get your family back together and protect your family and get your husband back into your home?

A No.

Q Isn't that true?

A No.

Q That is not true?

A No.

N.T., March 13, 1991, at 98–99.

 We note that the scope and manner of cross-examination are always within the sound discretion of the trial judge whose decisions will not be overturned absent an abuse of that discretion. *Commonwealth v. Tyler,* 402 Pa.Super.˙ 429, 587 A.2d 326 (1991). Here, the trial court found that the above questions posed on cross-examination properly addressed the interests of the witness which might affect credibility. Trial court opinion at 10.

 Testimony that may show that a witness has a motive to fabricate should not be excluded. *See Commonwealth v. Dawson,* 486 Pa. 321, 405 A.2d 1230 (1979). Moreover, our supreme court has stated that a party against whom a witness is called always has the right to show by cross-examination that a witness is biased or has an interest in the result of the trial. *Commonwealth v. Williams,* 524 Pa. 218, 228, 570 A.2d 75, 80 (1990). We, therefore, are unable to find error in the trial court's permitting the Commonwealth to cross-examine Augusta Hlatky in the above manner.

 In his sixth and final claim, Hlatky questions the sentence imposed by the trial court as harsh and excessive. As this is a challenge to the discretionary aspects of sentencing, Hlatky is required to include in his brief a separate concise statement demonstrating that there exists a substantial question as to the appropriateness of the sentence under

the Sentencing Code. *See Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987) and Pa.R.A.P. 2119(f). Hlatky has included a separate concise statement in his brief as is required by Rule 2119(f).

We will now consider whether Hlatky has demonstrated the existence of a substantial question that the sentence imposed is inappropriate under the Sentencing Code. 42 Pa.C.S. § 9781(b). Whether a substantial question exists must be determined on a case-by-case basis. *Commonwealth v. Semuta,* 386 Pa.Super. 254, 562 A.2d 894 (1989), *appeal denied,* 524 Pa. 596, 568 A.2d 1246 (1989). It is only where a party can articulate reasons why a particular sentence raises doubts that the sentencing scheme as a whole has been compromised that the appellate court should review the manner in which the trial court exercised its discretion. *Commonwealth v. Williams,* 386 Pa.Super. 322, 324, 562 A.2d 1385, 1387 (1989) *citing Tuladziecki,* 513 Pa. at 515, 522 A.2d at 20.

We will be inclined to find that a substantial question has been put forth where an appellant advances a colorable argument that the trial court's actions were inconsistent with a specific provision of the Sentencing Code or contrary to the fundamental norms which underlie the sentencing process. *Commonwealth v. Losch,* 369 Pa.Super. 192, 201 n. 7, 535 A.2d 115, 119 n. 7 (1987).

Hlatky contends that the trial court failed to sufficiently state its reasons for the sentence imposed. He also alleges that the trial court relied upon impermissible reasons in sentencing Hlatky in the aggravated range on his convictions. We conclude that Hlatky's claim that the trial court failed to place sufficient reasons for his sentence on the record presents a substantial question. *Commonwealth v. Jones,* 418 Pa.Super. 93, 613 A.2d 587 (1992); *Commonwealth v. Thomas,* 370 Pa.Super. 544, 537 A.2d 9 (1988). Section 9721(b) of the Sentencing Code specifically provides:

... In every case in which the court imposes a sentence for a felony or a misdemeanor, the court shall make as part of the record, and disclose in open court at the time of

sentencing, a statement of the reason or reasons for the sentence imposed. . . .

■ Our standard when reviewing the discretionary aspects of sentencing is very narrow. We will reverse only when the appellant has demonstrated a manifest abuse of discretion on the part of the sentencing court. *Commonwealth v. Wright,* 411 Pa.Super. 111, 600 A.2d 1289 (1991).

The standard for determining whether the sentencing judge properly stated the reasons for imposition of sentence is controlled by the statement of our supreme court in *Commonwealth v. Devers,* 519 Pa. 88, 546 A.2d 12 (1988). *See also Commonwealth v. Jones, supra.* In *Devers,* the court held that the sentencing court may satisfy the requirement of disclosure, on the record, of the reasons for imposition of a particular sentence where the court indicates that it has been informed by a pre-sentence report. *Devers* at 101–102, 546 A.2d at 18.

■ In the present case, the sentencing court's disclosure satisfied the requirements set forth under *Devers.* The court indicated that it had reviewed the pre-sentence report including Hlatky's personal history and prior record score. The court also received additional information and argument from counsel for the defense and argument from the Commonwealth. Hlatky then personally addressed the court and indicated remorse for his actions; the sentencing court indicated that it believed the expression of remorse to be genuine.

After allowing the accused and the Commonwealth unrestricted time for providing the court with additional information and argument, the sentencing court proceeded to indicate its reasons for sentencing within the aggravated range of the sentencing guidelines, including the atrocious nature of Hlatky's acts which were barbaric and reflected "a mind regardless of social consequence." N.T., August 5, 1992, at 19. In its rationale, the sentencing court considered Hlatky as the perpetrator of the crimes and the criminal acts themselves. *See Commonwealth v. Green,* 396 Pa. 137, 150, 151 A.2d 241, 247 (1959); *Commonwealth v. Wright, supra.*

Further, contrary to Hlatky's assertions, the trial court did not attribute the abuse perpetrated upon Angela by Melody or Augusta Hlatky to Michael Hlatky. Rather, the trial court indicated that the abused, weakened physical condition of the child, including her severe state of dehydration and malnutrition, must have been obvious to Hlatky prior to his assault on the child.

After a thorough review of the sentencing transcript in this case, we conclude that there was no abuse of discretion on the part of sentencing court and we dismiss this claim as meritless.

Accordingly, based on the foregoing, we affirm the judgment of sentence.

Judgment of Sentence Affirmed.