J-S29007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN RANDOLPH SLOAN | |
| Appellant | No. 976 WDA 2014 |

Appeal from the Judgment of Sentence January 22, 2014
In the Court of Common Pleas of Allegheny  County
Criminal Division at No(s): CP-02-CR-0013842-2011

BEFORE:  PANELLA, J., MUNDY, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED JUNE 22, 2015**

Appellant, John Randolph Sloan, appeals from the judgment of sentence entered January 22, 2014, by the Honorable Edward J. Borkowkski, in the Court of Common Pleas of Allegheny County.  We affirm.

We take the underlying facts of this case from the trial court's October 21, 2014, opinion.

> On September 18, 2011, Sonya Smith was watching television inside the second floor bedroom of her residence at 9811 Glendale Road, in the Penn Hills section of Allegheny County.  Smith and Appellant's co-defendant, Mark Martin, had been involved in an intimate relationship since 2006, but became estranged in May 2011.  Appellant grew up in the same neighborhood as Smith and had contact with Smith during the course of her relationship with Martin, as Appellant and Martin were friends.  Martin was familiar with Smith's residence from

---

[*] Retired Senior Judge assigned to the Superior Court.

staying there during their relationship. Smith had locked all of the doors to her house before retiring to her bedroom. At approximately 3:45 A.M. Smith was awakened by the voices of Appellant and Martin outside of her home below her bedroom window. Smith called the police when she heard prying noises at the kitchen window, which was directly below her bedroom. Appellant and Martin, who were unable to gain entry through the locked doors, broke a window pane in the kitchen door to gain entry to Smith's home….

Shortly thereafter, Appellant, wearing black sweatpants, a black sweatshirt, gloves, a Halloween mask and a paintball mask, entered Smith's bedroom holding a 9mm firearm. Appellant ordered Smith to lie on her bed facedown and struck Smith in the head and arms multiple times with the firearm. Martin, who was wearing light colored clothes and a ski mask, entered Smith's bedroom shortly after Appellant. Both men straddled Smith and struck her multiple times in the arms and head; Appellant with the 9mm firearm and Martin with a heavy object, most likely a crowbar. Smith sustained a total of nine broken bones in her arms, bruising on her arms and back, and a concussion. As a result of the attack Smith spent several days in the hospital and one month in a nursing facility for rehabilitation.

Following the assault, the two men fled the residence. Martin left first, exiting through the sliding glass door in the dining room, a door that because of its "stickiness" could only be opened by someone familiar with the premises. At the same time Penn Hills police officers arrived on scene in response to Smith's 911 call. As Officer Ronald Como approached Smith's residence he saw Martin jog across the street, away from Smith's home. Officer Richard Pine approached from the opposite direction and witnessed Appellant, a short, black male with a distinct beard, exiting out the side kitchen door of Smith's residence. Appellant ran towards the rear wooded area of the home. Officer Pine gave a description of the man and his direction of travel over the radio. As Appellant fled he discarded the paintball mask and hat that he wore during the assault in the wooded area behind Smith's home. Appellant continued to flee the scene, and discarded the Halloween mask outside a nearby residence as he made his way to Frankstown Road.

Penn Hills Sergeant Patrick Manning, responding to Smith's residence, observed Appellant jogging on Frankstown Road as the sergeant traveled toward Smith's residence. Appellant was

less than one-half mile away from Smith's residence when he was observed by Sergeant Manning. Sergeant Manning, based on the information broadcast by officers Pine and Como, stopped and made contact with Appellant. Appellant, who had no identification on him, was wearing black sweatpants, a black sweatshirt, had a distinctive beard, and had mud and grass stains on his shoes. Appellant told Manning that he had been in a domestic altercation nearby and was "blowing off steam." Appellant was taken to the police station for interview and identification purposes. At the time Smith was hospitalized and not available for interviewing purposes, consequently Appellant, once identified, was released from custody pending further investigation.

A paintball mask and hat were recovered from the wooded area behind Smith's residence, and the Halloween mask was recovered from the neighbor's hard (9818 Glendale Road). The hat and paintball mask were tested and the DNA on both items was a match to Appellant. At trial Smith identified the Halloween and paintball masks as the masks worn by Appellant during the assault. Additionally, Smith identified Appellant by his voice and his bowlegged gait.

Trial Court Opinion, 10/21/14 at 5-8 (footnote and record citations omitted).

Appellant was charged with aggravated assault,[1] burglary,[2] robbery,[3] and three counts of conspiracy.[4] A first jury trial, conducted on April 9-13, 2012, resulted in a mistrial when the jury was unable to reach a verdict. Following a second trial, a jury convicted Appellant of all charges, with the exception of robbery. On January 22, 2014, the trial court sentenced Appellant to an aggregate term of 12 to 24 years' incarceration. Appellant

_____

[1] 18 Pa.C.S.A. § 2702(a)(1).
[2] 18 Pa.C.S.A. § 3502(c)(1).
[3] 18 Pa.C.S.A. § 3701(a)(1)(i).
[4] 18 Pa.C.S.A. § 903(c).

filed a motion for reconsideration of sentence on January 31, 2014, which the trial court denied. This timely appeal followed.

Appellant raises the following issue for our review.

Did the trial court abuse its discretion when it denied Mr. Sloan's post-sentence motion, because the verdicts were against the weight of the evidence as Smith's testimony significantly changed from proceeding to proceeding, her identification of Mr. Sloan was tenuous and based on conjecture, and Officer Pine's testimony that he observed a man with a significant beard exit Smith's residence is counter to his prior testimony, his police reports, and the testimony of other officers?

Appellant's Brief at 5.

When reviewing a trial court's determination whether the verdict is against the weight of the evidence, we note that,

[t]he finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

As an appellate court we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or when "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breach, temporarily and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience."

Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (quoting *Commonwealth v. Cruz*, 919 A.2d 279, 281-82 (Pa. Super. 2007)) (citations omitted).

Appellant's argument on appeal fixes largely upon contradictions in the victim's identification testimony, as well as that of Officer Pine and Sergeant Manning. The trial court observed:

> Concerning the identification issue, the jury heard and considered testimony from Sonya Smith, Officer Pine and Sergeant Manning. This evidence established that: (1) Sonya Smith knew Appellant from growing up in the neighborhood; (2) Smith had contact with Appellant during her relationship with Martin; (3) Smith recognized the voice of Appellant as that of her first assailant; (4) Smith recognized the rather distinctive bowlegged gait of Appellant, as well as his height; (5) Officer Pine identified Appellant as the individual he saw fleeing Smith's home, wearing the same clothes as described by Smith, with a beard and bowlegged gait; (6) Sergeant Manning observed Appellant fleeing the area approximately one-half mile from Smith's residence and less than ten minutes after Officer Pine observed Appellant. (…)
>
> *        *        *
>
> The jury clearly found Sonya Smith, Officer Pine, and Sergeant Manning credible, and Appellant not so. Further, the location of the mask with Appellant's DNA supports the testimony of Smith, Officer Pine, and Sergeant Manning. (…)

Trial Court Opinion, 10/21/14 at 10, 13. The trial court's observations are supported by the evidence of record.

Upon review, we find no abuse of discretion by the trial court in determining that the verdicts were not against the weight of the evidence. Appellant is correct that various discrepancies existed as to the identification testimony of the Commonwealth witnesses at different stages in the

proceedings, but defense counsel had the opportunity to highlight any discrepancy on cross-examination—and indeed did so. "[T]he mere existence of a conflict in the evidence does not mean the trier of fact was required to resort to speculation." *Commonwealth v. Hlatky*, 626 A.2d 575, 580 (Pa. Super. 1993) (citation omitted).

Appellant's challenge to the weight of the evidence amounts largely to a veiled attack on the credibility of the Commonwealth's witnesses. Here, the jury acted well-within its discretion to credit the testimony of the Commonwealth's witnesses and not Appellant. *See Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa. Super. 2003) ("[T]he trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence." As we discern no abuse of the trial court's discretion, Appellant's challenge to the weight of the evidence is without merit.

Judgment of sentence affirmed.


Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/22/2015

- 6 -