J-S63025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KIEFER WRIGHT, | |
| Appellant | No. 766 EDA 2015 |

Appeal from the Judgment of Sentence October 17, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001845-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN and FITZGERALD,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED DECEMBER 01, 2016**

Appellant, Kiefer Wright,[1] appeals from the judgment of sentence entered following his convictions by a jury of aggravated assault, possession of instruments of crime ("PIC"), firearms not to be carried without a license, and carrying firearms on public streets or public property in Philadelphia. We affirm.

The trial court summarized the evidence presented at trial, as follows:

> Philadelphia Police Officer Adrian Truitt testified that in the afternoon of April 19, 2012, he and his partner responded to a report of a shooting in the vicinity of 56th and Broomall Streets in the City of Philadelphia.  On arriving he encountered two

_____

[*]  Former Justice specially assigned to the Superior Court.

[1]  The record reveals that Appellant's actual name is Christopher Wright. N.T. (Trial), 4/14/14, at 74.

women, Ms. Sakeyta Greene (Sakeyta) and Ms. Angelina Brownlee (Angelina), in the street preparing to fight each other. After separating the women, he placed Sakeyta in his vehicle and later transported her to the Southwest Detectives Unit to give a formal statement. He also observed a Pontiac Grand Prix car, registered to Angelina, parked at the scene which had been roped off with crime scene tape.

Prior to leaving the scene, Officer Truitt had an opportunity to observe Angelina and speak to her briefly. He saw no visible signs of injury to her person and testified that she told him that she and her boyfriend, "Chris," had come to the area to defend her sister, Mary Brownlee, who was upset because she had been tapped on the "butt".

Sakeyta testified that on April 19, 2012, at approximately 1:00 p.m., she received a phone call from her cousin, Mary Brownlee (Mary), complaining that someone had inappropriately touched her on the "butt". She then went to Mary's house, located at 56th and Broomall Streets and talked to her from the small "Poppy" store next door. While talking to Mary, she saw Angelina's black Pontiac being driven by [Appellant], pull up in front of the store. When [Appellant] parked the car she noticed a group of "Boys" approach the driver's side of the car and engage in a fight with [Appellant]. On hearing a gunshot she ran into the store with her infant child who was with her at the time. She testified that Angelina then drove off, returned alone a short while later and engaged in a verbal altercation with her over the incident. The police broke it up before "it got physical."

Sakeyta was then transported to Southwest Detectives to give a formal Statement. She acknowledged that as she gave her statement to Detective Vincent Parker he was typing out her responses. She also testified that at the end of the interview she signed each of the three pages of the print out of her statement after reviewing it on the computer screen.

Philadelphia Police Detective Vincent Parker testified that on April 19, 2012, at approximately 4:10 p.m., he interviewed Sakeyta and took her statement regarding the shooting at 56th and Broomall Streets. When he asked Sakeyta to describe the incident she replied:

- 2 -

"I was going to the poppy store to get something to eat when I saw a black Grand Prix pull up and park on the same side of the street as the poppy store, about two doors away from where I was at. The girl, Angelina Brownlee, was in the front passenger seat, and the guy, Chris Wright, was driving. There was no one else in the car. The Guy, Xzavien, came from across the street and walked over to the driver window of the car and started swinging on Chris. I saw Chris point a gun towards Xzavien and shot him. I heard one gunshot and Chris ran off and Angelina started driving, circling around looking for Chris. Everybody started running, and I was trying to get my son inside of poppy store."

She also told him that in addition to Xzavien, the complainant, "two to three other guys" also approached the car with him. When he asked Sakeyta if she knew what led to the shooting she replied: "No, but Angelina's sister, Mary Brownlee, told me that someone had smacked her on her butt and that she was going to get somebody to do something about it."

At the conclusion of the interview, Detective Parker printed out a copy of Sakeyta's statement, had her review it for accuracy and then sign each page. Detective Parker then had his partner review the statement to see if he had any additional questions before Sakeyta was permitted to leave.

The complainant, Xzavien Jennings (Xzavien), testified that on April 19, 2012, at approximately 1:00 p.m., he was around the corner from 56th and Broomall Streets talking with a friend when he heard a commotion and went to see what was happening. On arriving on 56th Street he saw people "talking back and forth" and decided to get involved in a fight with them. He testified further that at some point he heard a gunshot and it wasn't until later that he realized that he had been shot in the back with the bullet exiting through the stomach leaving permanent scars.

He testified that he was then taken to the Hospital of the University of Pennsylvania by friends who dropped him off at the emergency room and was operated on that day. Xzavien denied any recollection of giving a statement to Detective Mole on the

- 3 -

morning of the following day. When shown this statement he denied that it was his signature that was affixed to it.

Philadelphia Police Detective Fred Mole testified that on the day following the shooting, April 20, 2012, he interviewed the complainant, Xzavien, in his hospital room at the Hospital of the University of Pennsylvania at approximately 11:15 a.m. He described Xzavien as being lucid, coherent and up and about, despite having been shot the previous day, and willing to give his statement. When he asked Xzavien to describe the incident he replied:

> "Angela called me over to her at 56th Street between Broomall and Whitby Streets. I approached by myself, and I didn't know what Angel[2] wanted. When I got to the car, the guy who shot me pulled the gun. I started punching him and Angela. And then the guy let off four shots. I ran from the scene, and someone took me to . . . the hospital."

> [2] Throughout his testimony, the witness refers to Angela by that name as well as Angel and Angelina.

Detective Mole also testified that, as part of the interview, he displayed a photo array of eight photographs, including one of [Appellant]. On being shown the array, Xzavien immediately identified [Appellant] as the shooter and signed it to confirm his identification of [Appellant].

At the conclusion of the interview Detective Mole had Xzavien read his statement for accuracy. After reviewing his statement and making one correction Xzavien signed each page.

Kahdeem Brown (Kahdeem) testified that on April 19, 2012 he was "chillin" at 56th and Broomall Streets when Angelina's car pulled up across the street from him. He stated that "like six, seven dudes, like, went -- they was walking over to the car. The next thing you know they swinging on whoever's in the car, or whatever. And then a shot rang out. Everybody started running." After making sure he was safe, he encountered the complainant, who he knew as "Ooo" on the street. Realizing that Xzavien had been shot, he put him in a friend's car, then drove him to the hospital. Not wanting to get

- 4 -

further involved, he left after taking him into the emergency room.

On returning to the scene Kahdeem was detained by the police and taken to Southwest Detectives where he gave a statement to Detective Deayoung Park. After giving his statement he signed each page and returned home.

Philadelphia Police Detective Deayoung Park testified that he interviewed Kahdeem Brown and took his written statement on April 19, 2012 with regard to the shooting earlier that day. He testified that when he asked him what he had seen, Kahdeem responded:

> "I was seating across the poppy store. That's when Ricky was calling the girl telling her to bring the boy back around here that was looking for CJ. So about an hour later, she comes up pulling up in a black Grand Prix with the boy driving. So Ooo and CJ walked over to the Grand Prix and Ooo was talking to the door, and next thing I knew Ooo was swinging at the boy in the car. Then I think CJ opened the car door and Ooo was starting to kick on the boy and the girl. Then the shots rang out, and everybody started to run. So we, meaning me and Ricky, ran around to Malcolm Street, and Ooo was like, 'I'm shot, I'm shot.' And that's when the cops started to pull up and kept asking, 'Who got shot, who got shot.' And Ooo was hiding from where he was bleedings so the cop won't see. That's when Cliffy pulled up and put Ooo in the car and took him to the hospital. We were coming back, and that's when we got pulled over by the cops."

Before concluding the interview, Detective Park gave Kahdeem a printed copy of his statement to review and make corrections. Kahdeem then signed each page of his statement.

[Appellant] testified that on April 19, 2012, at approximately 1:15 p.m., after leaving school, he picked up his girlfriend, Angelina, at her sister Mary's house, at 56th and Broomall Streets, to take her to work. When Angelina and Mary got in the car Mary told him, "Some boy had slapped her on her butt." When she said she wanted him to do something about it,

- 5 -

he testified that he got out of the car. "And then we walked in front of Mary's house, but there wasn't nobody out there. There wasn't nobody around. So we left. Me and Angelina left. I was taking her to work. So it's probably like 1:25."

[Appellant] testified that they returned shortly after leaving because Angelina had forgotten her work ID, which she needed. On returning to Mary's house he was approached on the driver's side of the car by a group of three or four men as he was backing into a parking space. He testified that he stopped the car before being fully parked and attempted to talk to the men when he was hit through the open window and a struggle ensued. He further testified that during the fight he pulled out the gun he had been sitting on during the fight and "I just -- I didn't even look out the driver's door. Like, I just shot." After firing the shot [Appellant] ran from the scene.

[Appellant] testified that he had purchased the gun illegally and did not have a license to carry it. He also testified that he had taken the gun to school that day, keeping it under the driver's seat of the car, and had placed it on the seat and was sitting on it when he returned to Mary's house.

Trial Court Opinion, 11/19/15, at 3–9 (record references omitted).

The trial court also recounted the procedural history:

On January 25, 2013, [Appellant] was arrested and charged with, inter alia; 1) Aggravated Assault pursuant to 18 Pa.C.S.A. §2702(a); 2) Firearms not to be Carried Without a License pursuant to 18 Pa.C.S.A. §6106; 3) Carrying Firearms on Public Streets or Public Property in Philadelphia pursuant to 18 Pa.C.S.A. §6108; and 4) Possession of an Instrument of a Crime with Intent pursuant to 18 Pa.C.S.A. 907(a)(PIC). On April 15, 2014, at the conclusion of his jury trial, [Appellant] was found guilty on all charges. On October 17, 2014, [Appellant] was sentenced on the charge of Aggravated Assault to a period of confinement in a state correctional facility of 7 to 15 years. [Appellant] was also sentenced to concurrent periods of probation of 5 years on the charge of Carrying a Firearm Without a License, 5 years on the charge of Carrying a Firearm on the Streets of Philadelphia and 5 years on the charge of PIC, to be served consecutively to his period of confinement.

On August 6, 2014, prior to sentencing, [Appellant] presented an oral Motion for Extraordinary Relief pursuant to Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 704(B). On October 17, 2014, at the conclusion of the hearing held to consider [Appellant's] motion and immediately prior to sentencing, the Court denied [Appellant's] motion. On October 24, 2014, [Appellant] timely filed a Motion For New Trial and In Arrest of Judgment and or Judgment of Acquittal and Reconsideration of Sentence pursuant to the Pennsylvania Rules of Criminal Procedure, Pa.R.Crim.P. 720. At the conclusion of a hearing held on February 3, 2015, the Court denied [Appellant's] motion.

On March 3, 2015, [Appellant] timely filed the instant appeal to the Superior Court of Pennsylvania. On March 6, 2015, this Court filed and served on [Appellant] an Order pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, directing [Appellant] to file and serve a Statement of Errors Complained of on Appeal, within 21 days of the Court's Order. On March 27, 2015, [Appellant] timely filed his Statement of Errors . . . .

Trial Court Opinion, 11/19/15, at 1–2.

Appellant raises eight issues for appellate review: [2]

[1.] Was the evidence presented at trial sufficient as a matter of law to support the conviction for aggravated assault (18 Pa.C.S.A. § 2702), where the evidence of record did not establish beyond a reasonable doubt that appellant/defendant was not justified (under 18 Pa.C.S.A. § 505) in firing a single shot when the complainant and several other males approached the car appellant was parked in, began beating appellant, forced the door nearest appellant open, continued to beat appellant with fists and began to kick appellant, and did not abate the attack until the single shot was fired?

[2.] Was the evidence presented at trial sufficient as a matter of law to support the conviction for possessing an instrument of crime (18 Pa.C.S.A. § 907), where the evidence of

---

[2] For convenience, we have numbered Appellant's issues.

record did not establish beyond a reasonable doubt that appellant/defendant was not justified (under 18 Pa.C.S.A. § 505) in using a firearm to fire a single shot when the complainant and several other males approached the car appellant was parked in, began beating appellant, forced the door nearest appellant open, continued to beat appellant with fists and began to kick appellant, and did not abate the attack until the single shot was fired?

[3.] Was the evidence presented at trial sufficient as a matter of law to support the conviction for aggravated assault (18 Pa.C.S.A. § 2702), where the evidence of record did not establish beyond a reasonable doubt that appellant/defendant caused serious bodily injury to the complainant intentionally, knowingly, or under circumstances manifesting an extreme indifference to the value of human life, where appellant did not instigate the violence, fired a single shot while being beaten by a number of males who forced their way into appellant's vehicle and appellant did not fire additional shots, utilize the vehicle as a weapon, or pursue or attempt to further injure any of the attackers?

[4.] With respect to the charge of aggravated assault (18 Pa.C.S.A. § 2702), was the verdict . . . against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice in light of the circumstances set forth in the preceding questions?

[5.] With respect to the charge of possessing an instrument of crime (18 Pa.C.S.A. § 907), was the verdict . . . against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice in light of the circumstances set forth in the preceding question?

[6.] Did the trial court deny the appellant/defendant a fair trial by repeatedly interjecting the Court's own conclusions regarding the facts of the case during the charge to the deliberating jury and, in doing so, interfere with the role of the jury?

[7.] Did the trial court give an instruction to the jury during deliberations regarding the charge of justification which was incomplete, unbalanced, inadequate, unclear, misleading,

- 8 -

inappropriate, and inaccurate statement of the law and prejudicial to Defendant?

[8.] With respect to the sentence imposed upon defendant/appellant by the trial court, did that court abuse its discretion by imposing an aggregate sentence of not less than 7, nor more than 15, years of incarceration (followed by 5 years of probation) upon the defendant where:

(a) the aggravating circumstances cited by the trial court already resulted in an increased guideline range but the court imposed a sentence at the top of the aggravated range of the increased guideline range; and,

(b) the trial court recognized that there are mitigating circumstances in this case, but imposed a sentence which is unreasonable under the circumstances of the case and outside of the sentencing guidelines on the charge of aggravated assault by imposing a sentence at the top of the aggravated range of the increased guideline range?

Appellant's Brief at 7–9.[3]

Appellant questions the sufficiency of the evidence to support his aggravated assault and possession of an instrument of crime convictions asserting that the Commonwealth failed to disprove his self-defense theory. He also contends that the evidence was insufficient to establish that he acted with the requisite *mens rea* to support a conviction for aggravated assault.

We review evidentiary sufficiency questions under the following standard:

---

[3] We observe that Appellant's Statement of Questions Presented portion of his Brief is far more detailed than in his Pa.R.A.P. 1925(b) Statement.

The standard we apply is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011) (quoting

*Commonwealth v. Jones*, 874 A.2d 108, 120–121 (Pa. Super. 2005

(citations omitted)).

With respect to self-defense, we are guided by 18 Pa. C.S. § 505 which sets forth the elements of self-defense:

**§ 505. Use of force in self-protection**

**(a) Use of force justifiable for protection of the person.—** The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.

18 Pa.C.S. § 505(a). We also note that our legislature has imposed the following relevant limitations on the use of self-defense:

**(b) Limitations on justifying necessity for use of force.—**

- 10 -

* * *

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . .

(2.1) Except as otherwise provided in paragraph (2.2), an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if both of the following conditions exist:

(i) The person against whom the force is used is in the process of unlawfully and forcefully entering . . . a[n] occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the . . . occupied vehicle.

(ii) The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

(2.2) The presumption set forth in paragraph (2.1) does not apply if:

* * *

(iii) the actor is engaged in a criminal activity or is using the . . . occupied vehicle to further a criminal activity;

* * *

(2.3) An actor who is not engaged in a criminal activity, who is not in illegal possession of a firearm and who is attacked in any place where the actor would have a duty to retreat under paragraph (2)(ii) has no duty to retreat and has the right to stand his ground and use force, including deadly force, if:

(i) the actor has a right to be in the place where he was attacked;

(ii) the actor believes it is immediately necessary to do so to protect himself against death, serious bodily injury, kidnapping or sexual intercourse by force or threat; and

* * *

**(d) Definition.**--As used in this section, the term "criminal activity" means conduct which is a misdemeanor or felony, is not justifiable under this chapter and is related to the confrontation between an actor and the person against whom force is used.

18 Pa.C.S. § 505 (b) and (d).

"When a defendant raises the issue of self-defense, the Commonwealth bears the burden to disprove such a defense beyond a reasonable doubt." *Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa. Super .2008). The Commonwealth sustains this burden if it establishes at least one of the following: (1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; (2) the accused provoked or continued the use of force; or (3) the accused had a duty to retreat and the retreat was possible with complete safety. *Commonwealth v. McClendon*, 874 A.2d 1223, 1230 (Pa. Super. 2005). The Commonwealth need only prove one of these elements beyond a reasonable doubt to sufficiently disprove a self-defense claim. *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa. Super. 2000).

*Commonwealth v. Ventura*, 975 A.2d 1128, 1143 (Pa. Super. 2009). *See also Commonwealth v. Mouzon*, 53 A.3d 738, 752 (Pa. 2012) (before a defendant can be excused from using deadly force, he must reasonably believe that he is in imminent danger, must be free from fault in provoking or escalating the altercation that led to the offense, and did not violate the duty to retreat); *Commonwealth v. Truong*, 36 A.3d 592, 599 (Pa. Super. 2012) ("[I]f the defender did not reasonably believe deadly force was

necessary[,] he provoked the incident, or he could retreat with safety, then his use of deadly force in self-defense was not justifiable.") (citation omitted). "It remains the province of the jury to determine whether the accused's belief was reasonable, whether he was free of provocation, and whether he had no duty to retreat." *Commonwealth v. McClendon*, 874 A.2d 1223, 1230 (Pa. Super. 2005) (citation omitted).

The trial court analyzed Appellant's self-defense claim as follows:

[Appellant] testified that when he first came on the scene to take Angelina Brownlee to work, he had been asked to do something about an offense committed against her sister, Mary Brownlee. Finding no one to talk to, he left. He also testified that when he later returned to the area to get Angelina's work ID, he had no reason to fear anything was about to happen, yet, despite this state of affairs, he testified that he felt he needed to be sitting on top of the loaded gun he illegally possessed.

On returning to the scene, [Appellant] had not fully parked the car when they were approached by [a] group of men who attacked them from the driver's side only. Although he and Angelina had been attacked and beaten through the open door and window of the car, he described their injuries as "nothing extravagant," agreeing that they were not sufficient to cause him "to have to take a handgun out, and shoot someone in the stomach." In addition, there was no evidence presented that any of their assailants were armed with anything but their fists. When a defendant uses greater force than was reasonably necessary to protect against death or serious bodily injury, his use of unreasonable force renders his claim of self-defense unavailable. *Truong*, *Supra*.

Sakeyta's testimony that she had gone to visit Mary after receiving a call from Mary telling her that she had been improperly touched on the "butt", and, that when she saw [Appellant] pull up in the car she knew [Appellant] was also "on the way", supports the conclusion that [Appellant] came on the scene prepared to fight in defense of Mary's honor. This conclusion that [Appellant] came upon the scene prepared to fight is supported by her sworn statement to Detective Parker

- 13 -

that as the complainant approached the car she saw [Appellant] "point a gun towards Xzavien and shot [sic] him."

The complainant, Xzavien Jennings, in his statement to Detective Mole, stated that he had been called to the scene by Angelina. He also stated that when he got to the car "the guy who shot me pulled a gun. I started punching him and Angela."

It is clear, on viewing the evidence in a light most favorable to the verdict winner, the evidence was sufficient for the jury to have concluded that when [Appellant] arrived on the scene it was his intent to use the loaded gun he was sitting on to defend the honor of Mary Brownlee. Furthermore, by [Appellant's] own admission that his and Angelina's injuries were "nothing extravagant" and not sufficient to cause him "to have to take a handgun out, and shoot someone in the stomach" was sufficient for the jury to conclude that he "did not reasonably believe that he was in danger of death or serious bodily injury." Additionally, [Appellant's] testimony that he had not fully parked the car and that the attack came only from the driver's side was sufficient to support the conclusion that not only did he have an avenue of escape open to him, but, that he chose to remain and engage in the fight that ensued.

A review of the record makes it clear [Appellant's] complaint falls of its own weight.[3] The evidence was sufficient for the jury to have concluded that [Appellant] came on the scene sitting on a loaded gun he was prepared to use, that he chose not to retreat, but instead opted to engage in the fight, that the injuries sustained were not sufficient to reasonably put him in immediate fear of death or serious bodily injury, that he acted recklessly without regard to the consequences in shooting the gun into a crowd and that he overreached in using a loaded gun to a fist fight. The Commonwealth met its burden in disproving [Appellant's] claim of self-defense beyond a reasonable doubt.

[3] Court notes that [Appellant's] claim of self-defense was weakened further by his admission at trial that he was raising the defense of justification for the first time on the stand and that he had not discussed the issue with trial counsel prior to the commencement of trial.

Trial Court Opinion, 11/19/15, at 15–17 (record references omitted).

Appellant's first argument is that the evidence failed to establish beyond a reasonable doubt that his actions were not justified under 18 Pa.C.S. § 505. Because the evidence is clear that Appellant did not reasonably believe he was in danger of death or serious bodily injury, we disagree.

> The requirement of a reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant "must have acted out of an honest, bona fide belief that he was in imminent danger," which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis. *Commonwealth v. Light*, 458 Pa. 328, 326 A.2d 288 (1974).

*Mouzon*, 53 A.3d at 751–752.

Regarding Appellant's subjective belief that he was in danger, Appellant admitted that his and Ms. Brownlee's injuries were "nothing extravagant" and agreed that there was not sufficient cause "to have to take a handgun out, and shoot someone in the stomach." N.T., 4/14/14, at 98–99. This admission alone was sufficient for the jury to conclude that Appellant did not reasonably believe that he was in danger of death or serious bodily injury.

Appellant does not offer a rebuttal to his admission that his injuries were slight and that he was not justified in producing a gun and firing. Instead, Appellant focuses on an objective analysis—that his belief that he needed to defend himself with deadly force was reasonable in light of the

- 15 -

facts as they appeared to him. Appellant avers that the eyewitness testimony at trial demonstrated that at least four men stormed his vehicle and began punching him and Ms. Brownlee and forced their way into the vehicle. Citing **Commonwealth v. Glover**, 449 A.2d 662 (Pa. Super. 1982) and **Commonwealth v. Gregory**, 406 A.2d 539 (Pa. Super. 1979), Appellant asserts that authority from this Court indicates that the above-described attack would warrant a reasonable person to believe that the attackers attempted to cause serious bodily injury.

We observe that the credibility of eyewitnesses' trial testimony was challenged because it was inconsistent with their statements to the police recorded after the shooting. At trial, Sakeyta Greene testified that she observed "about ten" boys around the car holding Appellant and Ms. Brownlee and saw them throwing punches. N.T. (Trial), 4/10/14, at 62, 64. She denied seeing anyone with a gun. **Id.** at 65. However, in her statement to the police, Ms. Greene related: "the guy Xzayvien came across the street and walked over to the driver window and started swinging on [Appellant]. I saw [Appellant] point a gun towards Xzayvien and shot him." **Id.** at 80; Commonwealth Exhibit C 14.

The victim, Xzayvien Jennings, represented at trial that he observed a commotion at 56th and Broomall Streets involving four or five people. N.T. (Trial Volume II), 4/11/14, at 65, 67. Mr. Jennings explained that when he approached the group, words were being exchanged, and he became

involved because he "just wanted to fight." *Id.* at 68. Mr. Jennings denied seeing anybody with a gun and claimed he did not realize he had been shot until he discovered blood on his shirt. *Id.* at 70–71. This testimony contradicted Mr. Jennings's statement to police the day after the shooting wherein he recounted: "I approached [the vehicle] by myself . . . . When I got to the car the guy who shot me pulled a gun. I started punching him and Angela and then the guy let off four shots." *Id.* at 89; Commonwealth Exhibit C 12.

The third eyewitness, Kahdeem Brown, told the jury that he was present at 56th and Broomall Streets on the day of the shooting and saw "six, seven dudes walking over to the car." N.T. (Trial Volume II), 4/11/14, at 200. This recollection is at odds with Mr. Brown's statement to police that he saw only two people approach Ms. Brownlee's vehicle. *Id.* at 219; Commonwealth Exhibit C 5.[4]

A witness's prior inconsistent statement could be admitted as substantive evidence "when the statement had been given under oath at a formal legal proceeding, reduced to writing and signed by the declarant, or recorded verbatim contemporaneously with the making of the statement." *Commonwealth v. Ragan*, 645 A.2d 811, 818 (Pa. 1994).

---

[4] All three eyewitnesses signed their respective police statements.

The trial court herein instructed the jury on this legal maxim, informing them:

> [Y]ou are permitted to accept and consider the prior written statements of any witness . . . and you may treat it in the same manner as you would any other evidence. . . . [I]t is entirely up to you to decide whether to accept the statements in whole or in part and to decide what weight, if any, to give them.

N.T. (Trial Volume III), 4/14/14, at 138–139.

Thus, it was within the province of the jury to determine the credibility of the eyewitnesses' trial testimony in light of their prior inconsistent statements, particularly because other evidence indicated that these witnesses could have been influenced improperly by Appellant and Ms. Brownlee. During cross-examination, Appellant was confronted with recordings and transcripts of telephone calls between him and Ms. Brownlee while he was incarcerated. In a call on January 28, 2013, Appellant indicated to Ms. Brownlee that he did not want Sakeyta Greene to appear in court because she had given a statement to police that Appellant shot Mr. Jennings. N.T. (Trial Volume III), 4/14/14/, at 103. Ms. Brownlee responded, "Cuz she show up, she gon' turn up missing." **Id.** at 104; Commonwealth Exhibit 33. On January 31, 2013, Appellant, referring to Mr. Jennings, stated to Ms. Brownlee, "He got to point that finger, and if he point that finger, you already know what's going to happen to him." **Id.** at 105. Appellant also admitted that his reference to Mr. Jennings in a

subsequent February 5, 2013 call concerned trying to persuade Mr. Jennings not to appear in court. *Id.* at 113.

After observing the demeanor of the eyewitnesses and hearing the recordings of the prison telephone calls, it is apparent that the jury resolved the conflicts in the evidence favorably to the Commonwealth. As we are also obligated to view contradictory testimony to the Commonwealth's advantage, we conclude that sufficient evidence demonstrated that Appellant's actions were not justified in this matter. *See Commonwealth v. Sanchez*, 848 A.2d 977, 982 (Pa. Super. 2004) (in sufficiency of evidence review, conflicts in testimony are resolved in favor of the verdict winner).[5]

Appellant next offers that the limits on use of force detailed in 18 Pa.C.S. § 505(b), colloquially known as the "castle doctrine," are not applicable herein because he was not engaged in "criminal activity" as defined by the statute. The Commonwealth urges that this argument is waived because Appellant did not invoke the castle doctrine at trial. Additionally, we observe that Appellant's Rule 1925(b) statement does not mention either subsection 505(b) or the castle doctrine but merely states

---

[5] We further note that the precedent cited by Appellant to support his claim that a reasonable person would believe that he needed to defend himself with deadly force is not persuasive. Both *Glover*, 449 A.2d 662, and *Gregory*, 406 A.2d 539, discuss whether the evidence demonstrated that the actors attempted to cause serious bodily injury sufficient to sustain convictions for aggravated assault. Neither appellant in those cases propounded a self-defense claim.

that "[t]he evidence presented at trial was insufficient to show that [Appellant] attempted to cause serious bodily injury to another, or caused such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." Appellant's Pa.R.A.P. 1925(b) Statement, 3/27/15, at unnumbered 1. Finally, the trial court did not reference the applicability of the castle doctrine in its discussion of the sufficiency of the evidence supporting Appellant's justification defense.[6] While these factors all indicate that Appellant has waived his castle doctrine argument, it also fails on the merits.

As delineated above, use of deadly force is justifiable if the actor believes that such force is necessary to protect himself against serious bodily injury. 18 Pa.C.S. § 505(a). An actor is presumed to have such reasonable belief if the person against whom the force is used is in the process of unlawfully or forcefully entering an occupied vehicle. 18 Pa.C.S. § 505(b)(2.1)(i). However, section 505(b)2.1's presumption does not apply if the actor is engaged in criminal activity. 18 Pa.C.S. § 505(b)(2.2)(iii). "Criminal activity" is defined as "conduct which is a misdemeanor or felony, is not justifiable under this chapter and is related to the confrontation

---

[6] In the portion of its Pa.R.A.P. 1925(a) opinion discussing the jury instructions, the trial court explained that it did not include an instruction on the castle doctrine, because "in view of the evidence at trial . . . it didn't apply." Trial Court Opinion, 11/19/15, at 28.

between an actor and the person against whom force is used." 18 Pa.C.S. § 505(d).

Appellant's contention that he was not engaging in criminal activity when he shot Mr. Jennings is indefensible. First, Appellant confessed that he illegally possessed a firearm, graded as a felony of the third degree under 18 Pa.C.S. § 6106(a)(1). He likewise admitted that there was insufficient cause "to have to take a handgun out, and shoot someone in the stomach." N.T., 4/14/14 (Volume III), at 98–99. Finally, Appellant's discharge of his firearm was indisputably related to the confrontation between himself and the victim herein. Thus, Appellant's activity under scrutiny clearly constituted criminal activity as that term is defined in 18 Pa.C.S. § 505(d). [7]

_____

[7] Appellant's argument that the language of 18 Pa.C.S. § 505(b)(2.3) instructs that illegal possession of a firearm is not criminal activity is untenable. That subsection reads as follows: "An actor who is not engaged in a criminal activity, who is not in illegal possession of a firearm and who is attacked in any place where the actor would have a duty to retreat under paragraph (2)(ii) has no duty to retreat under certain circumstances." 18 Pa.C.S. § 505(b)(2.3). Appellant suggests that the use of the phrases "engaged in criminal activity" and "not in illegal possession of a firearm" in the same sentence requires a conclusion that "'illegal possession of a firearm' is not, *per se,* 'criminal activity' for purposes of § 505(b). If it were, the use of both phrases consecutively in § 505(b)(2.3) would be redundant . . . ." Appellant's Brief at 26. Appellant fails to note, however, that subsection 505(b)(2.3) relates to circumstances when an actor's duty to retreat is not required and has no bearing on whether the actor's activity is considered criminal in nature.

Considering the evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth met its burden of disproving Appellant's claim of self-defense. After presentation of conflicting evidence, the jury was entitled to reject Appellant's claim that he, either subjectively or objectively, reasonably believed that his life was in imminent danger. Additionally, Appellant did not demonstrate that his use of force was justifiable under the castle doctrine. Hence, Appellant's contrary claim that the Commonwealth failed to meet its burden to negate his justification defense lacks merit.

Appellant next argues that the evidence was insufficient to establish that he acted with the requisite *mens rea* to support his aggravated assault conviction. The trial court rejected this argument, reasoning:

> [Appellant] was found guilty of Aggravated Assault pursuant to 18 Pa.C.S.A. 2702(a)(1) which provides in part that, (a) "A person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."
>
> * * *
>
> "A person acts intentionally with respect to a material element of an offense when...it is his conscious object to engage in conduct of that nature or to cause such a result. As intent is a subjective frame of mind, it is of necessity difficult of direct proof. The intent to cause serious bodily injury may be proven by direct or circumstantial evidence." ***Commonwealth v. Matthew***, 909 A.2d 1254, 1257 (Pa. 2006) (Citations omitted). Our Superior Court in ***Commonwealth v. Jackson***, 955 A.2d 441, 446 (Pa. Super. 2008) citing its decision in ***Commonwealth v. Alexander***, 477 Pa. 190, 383 A.2d 887, 889 (1978), reiterated the law of Pennsylvania that the test to

be applied in "determining whether a defendant, who was charged under the attempt provision of the aggravated assault statute, possessed the intent to inflict serious bodily injury" is a totality of the circumstances test. Among the issues to be considered is any "evidence of significant difference in size or strength between the defendant and the victim... the defendant's use of a weapon or other implement to aid his attack and statements or actions that might indicate his intent to inflict injury. **Id.**

The Commonwealth presented sufficient evidence to support [Appellant's] conviction on the charge of aggravated assault. [Appellant], by his own admission shot through the open door of his car into the group of men surrounding his vehicle striking the complainant in the back. The Court notes that [Appellant's] act, regardless of his intent, in and of itself constitutes "an act of gross recklessness for which he must reasonably anticipate that death to another is likely to result." **Commonwealth v. Malone**, 354 Pa. 180, 183, 47 A.2d 445, 447 (1946); *In accord*; **Commonwealth v. Coleman**, 455 Pa. 508, 508, 318 A.2d 716, 717 (1974), **Commonwealth v. Seibert**, 424 Pa. Super. 242, 622 A.2d 361 (1993). It is equally clear that shooting complainant in the back created a "substantial risk of death" and the resulting scar constitutes a "permanent disfigurement."

Trial Court Opinion, 11/19/15, at 11–13.

Appellant does not deny that he fired a shot that struck the victim. Instead, Appellant takes the position that the discharge of his weapon was understandable in light of the fact that he was under attack by a violent group of at least four men. He further offers that because he: 1) did not produce the gun as the group approached his car; 2) did not brandish the gun as the men beat Appellant and his girlfriend; and 3) fired only one shot after the attack escalated, there was not sufficient evidence to establish that either he shot Mr. Jennings knowingly or intentionally or that he acted with

the necessary malice to support an aggravated assault conviction. Appellant further avers that the fact that he fired only one shot demonstrates that he exercised restraint sufficient to undermine any conclusion that he acted knowingly, willingly, or with malice as required by the aggravated assault statute.

We are unpersuaded by Appellant's stance that his firing of a gun indicates restraint, as opposed to demonstrating a reckless indifference to life. This Court has stated:

Where the victim suffers serious bodily injury, the Commonwealth is not required to prove specific intent. *Commonwealth v. Nichols*, 692 A.2d 181, 185 (Pa. Super. 1997) (citing *Commonwealth v. Hlatky*, 426 Pa.Super. 66, 626 A.2d 575 (1993), *appeal denied,* 537 Pa. 663, 644 A.2d 1200 (1994)).

The Commonwealth need only prove [the defendant] acted recklessly under circumstances manifesting an extreme indifference to the value of human life. *Hlatky, [supra]* at 581. For the degree of recklessness contained in the aggravated assault statute to occur, the offensive act must be performed under circumstances which almost assure that **injury** or death will ensue. [*O'Hanlon, supra* at 482, 653 A.2d at 618].

*Nichols, supra* (emphasis added).

*Commonwealth v. Patrick*, 933 A.2d 1043, 1046 (Pa. Super. 2007).

Similarly, we held in *Commonwealth v. Payne*, 868 A.2d 1257 (Pa. Super. 2005) that:

the Commonwealth was not required to prove appellant acted with the "specific intent" to cause [a victim's] injuries. . . . Since appellant **actually caused** [the victim's] serious bodily injury,

- 24 -

the Commonwealth, at a minimum, had to prove that the appellant caused these injuries "recklessly under circumstances manifesting extreme indifference to the value of human life." In other words, the Commonwealth had to prove that appellant acted with malice.

To prove malice, "it must be shown that the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily harm." This state of mind may be inferred "from conduct, recklessness of consequences, or the cruelty of the crime." In following, under our caselaw, **we have extraordinarily well established precedent stating that if a gun discharges and the bullet strikes the victim, the intentional act of pointing the gun and aiming it at a vital part of the human body creates the presumption of malice**.

*Id.* at 1261 (citations omitted) (emphases added). *See also Commonwealth v. Wesley*, 860 A.2d 585, 593 (Pa. Super. 2004) ("By causing serious bodily injury to the victim with a gun, namely, wounding the victim in the back, Appellant committed aggravated assault.").

Here, the jury heard conflicting testimony as to the number of individuals involved in attacking Appellant and the timing of Appellant's firearm discharge. It is solely within the province of the factfinder to determine a witness's credibility. *Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa. Super. 2013). The jury also heard undisputed testimony that Appellant shot Mr. Jennings in the back actually causing serious bodily injury. Additionally, Appellant discharged his weapon and struck the victim, thus creating an assumption of malice. Accordingly, there was sufficient evidence that Appellant acted with the requisite *mens rea* to support his aggravated assault conviction.

Appellant's third and fourth allegations of error are that his convictions of aggravated assault and possession of an instrument of crime are against the weight of the evidence. Appellant has waived review of these issues because he failed to specify the reasons why these verdicts were contrary to the weight of the evidence in his Pa.R.A.P. 1925(b) Statement.

In **Commonwealth v. Freeman**, 128 A.3d 1231 (Pa. Super. 2015), this Court addressed whether an assertion in a 1925(b) statement that "[t]he verdict of the jury was against the weight of the evidence" was too imprecise to preserve the issue for review. **Id.** at 1249. The appellant in **Freeman** failed to specify in his Rule 1925(b) statement which verdict was contrary to the weight of the evidence, or offer specific reasons as to why those verdicts were contrary to the evidence's weight. We determined that the appellant waived review of his weight of the evidence challenge because the phrasing of this issue was "too vague to allow the court to identify the issues raised on appeal" and was "the functional equivalent of no Concise Statement at all." **Id.**; **see also Commonwealth v. Seibert**, 799 A.2d 54, 62 (Pa. Super. 2002) (holding that appellant waived his challenge to the weight of the evidence where his 1925(b) statement merely asserted that "[t]he verdict of the jury was against the weight of the credible evidence as to all of the charges.").

Here, too, Appellant failed to specify in his 1925(b) Statement the reasons why the verdicts for aggravated assault and possession of a firearm

were against the weight of the evidence. Instead, Appellant asserted only that these verdicts were "against the weight of the evidence to such a degree as to shock one's conscience and sense of justice." Appellant's Pa.R.A.P. 1925(b) Statement, 3/27/15, at unnumbered 2. As in *Freeman*, Appellant's failure to offer specific reasons why the verdicts were contrary to the weight of the evidence results in waiver of these two issues.

Waiver also defeats consideration of Appellant's sixth and seventh arguments that the trial court erred in its instruction to the jury regarding the charge of justification and that the trial court interjected its own conclusions regarding the facts of the case, resulting in an unfair trial. These claims are waived due to Appellant's failure to object to the trial court's jury charge and Appellant's failure to move for a mistrial in a timely fashion.[8]

Appellant concedes that his trial counsel did not object to the jury charge prior to deliberations. He also admits that trial counsel offered no objection to the court's comments to the jury during his instruction about the evidence and law. Appellant's Brief at 36. Thus, any challenges to the content of or omissions from the trial court's jury instructions are waived.

---

[8] We note that Appellant's Rule 1925(b) statement does not explicitly challenge the trial court's denial of the mistrial motion. However, we will flexibly interpret Appellant's claim that the trial court interfered with the role of the jury and denied Appellant a fair trial as preserving this question for appellate review.

*See Commonwealth v. Garang*, 9 A.3d 237, 245 (Pa. Super. 2010) (defendant did not preserve trial court's alleged failure to instruct jury that defendant could not be convicted of conspiracy, in prosecution for attempted homicide and related offenses, where defense counsel failed to object to jury instruction). Thus, Appellant confines his argument regarding the jury instructions to the point in the proceedings where he alleged he objected to the trial court's instructions and moved for a mistrial.

It is essential to view Appellant's argument in the context of the trial's timeline. After the jury had retired and deliberated for a few hours, it requested the court to clarify the laws defining aggravated assault, justification, self-defense, and possession of an instrument of crime. N.T., 4/15/14, at 4. The court then re-instructed the jury on the elements of these offenses and defenses. After the supplemental instructions were received by the jury, the trial court asked counsel: "Does anyone have anything additional before the jury goes out to deliberate?" *Id.* at 29. Defense counsel did not respond and certainly, at this time, did not lodge any objection to the trial court's supplemental instructions. Four hours later, defense counsel orally motioned for a mistrial based upon the trial court's supplemental jury instructions. N.T. 4/15/14, at 30–33. Counsel did not object to the specific content of the supplemental instructions; instead, defense counsel asserted: "Judge, I would respectfully submit [you] gave the jurors no other alternative but to convict [Appellant] on all charges," and

he requested the court to grant a mistrial "based on the conversation you had with the jury earlier this morning." *Id.* at 31. After a brief recess, to ensure that his motion was properly preserved, defense counsel again stated: "Judge, I would respectfully submit that you gave the jury no other alternative but to find [Appellant] guilty on all charges. So with that, Judge, I would make a motion for a mistrial . . . ." *Id.* at 35. Noting the announcement that the jury had reached a verdict and explaining that it did not agree with defense counsel that it "overstep[ped] its bounds," the trial court denied the mistrial motion. *Id.* at 34–36.

We begin by noting that defense counsel did not object to the trial court's supplemental jury instructions prior to the jury resuming its deliberations. Counsel's failure to object to the jury instruction at this moment is fatal to Appellant's claim that the trial court interfered with the role of the jury. Pennsylvania Rule of Criminal Procedure 647(C) provides that: "No portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647 (C); *see also Commonwealth v. Laird*, 989 A.2d 610, 646 (Pa. 2010) (appellant's failure to object to jury instruction before it retired to deliberate resulted in waiver). Trial counsel herein similarly did not object to the trial court's charge prior to the jury returning to deliberate after the trial court addressed its questions;

accordingly, even if defense counsel objected to the specific instruction contemporaneously with his motion for a mistrial, the claim is waived.

Appellant's additional contention that the trial court abused its discretion when it displayed partiality to the Commonwealth's case, indicated the trial court's personal evaluation of the evidence, suggested a guilty verdict, and expressed an opinion as to Appellant's guilt is, in fact, a challenge to the trial court's denial of his motion for a mistrial. Albeit for different reasons, this challenge to the court's comments to the jury is likewise waived.

Pennsylvania Rule of Criminal Procedure 605(B) provides: "When an event prejudicial to the defendant occurs during trial only the defendant may move for a mistrial; the motion shall be made when the event is disclosed. Otherwise, the trial judge may declare a mistrial only for reasons of manifest necessity." Pa.R.Crim. P. 605(B); **Commonwealth v. Walker**, 954 A.2d 1249, 1254 (Pa. Super. 2008); **see also Commonwealth v. Smith**, 410 A.2d 787, 790 (Pa. 1980) (holding that a motion for a mistrial made two to three minutes after the allegedly prejudicial event was untimely). A decision to refuse a mistrial is reviewed for an abuse of discretion. **Commonwealth v. Manley**, 985 A.2d 256, 266–267 (Pa. Super. 2009).

As detailed above, defense counsel remained silent after the trial court issued its supplemental instructions to the jury. Four hours later, counsel

presented its initial motion for a mistrial. At this point, the court became aware that the jury had reached a verdict.

Appellant's motion for a mistrial was made too late, and therefore review of its denial is waived under Pa.R.Crim.P. 605(B). Here, Appellant claims that he received an unfair trial due to the trial court's remarks to the jury in its supplemental instructions. Yet, four hours of deliberation time passed before he moved for a mistrial or otherwise objected. Appellant should have requested the mistrial when cued by the trial court after it responded to the jurors' questions: "Does anyone have anything additional before the jury goes out to deliberate?" N.T. (Trial), 4/15/14, at 29. Having failed to do so, Appellant waived any objection to the trial court's denial of his mistrial motion.

Appellant's final issue concerns his sentence and he described it in his Rule 1925(b) Statement as follows: "[Appellant's] sentence is unduly harsh and excessive." Appellant's 1925(b) Statement, 3/17/15, at unnumbered 2. While the trial court mused that this vague assertion of error waived the sentencing issue, it nevertheless discussed the issue on the merits, as follows:

> Prior to imposing sentence, it was agreed by counsel, that on the charge of aggravated assault, [Appellant's] prior record score (PRS) was 0 and, based on the serious injury to the complainant, the Court found that the offense gravity score (OGS) was 11. It was also determined that, employing the deadly weapons enhancement, the guidelines recommended a range of 54 to 72 months [plus or minus] 12 months incarceration. It was further agreed that [Appellant] was not

RRRI eligible. Prior to imposing sentence the Court reviewed [Appellant's] Presentence Investigation report (PSI), listened to argument of counsel, and considered [Appellant's] statement.

[Appellant's] PSI, dated 6/25, 2014, discloses that [Appellant] has a high school diploma as well as some college credits. He has had no discernible taxable employment since 2008 and was discharged from the Army Reserve in 2012 on "Other Than Honorable" conditions. (PSI, pg. 2) It also reveals, despite his PRS of 0, that as an adult he has had three criminal arrests and convictions. (PSI, pg. 3)

In imposing sentence, the Court stated for the record:

"[I] agree with counsel that there are both aggravating and mitigating circumstances in this case. As aggravated assaults go, this is a serious aggravated assault because of the injury. [Appellant's] prior record score does not fully reflect his criminal history because of the events pointed out by the D.A.

[Appellant] says he's sorry, but he's still couching his regret in terms of he's sorry for what has happened to him. Regardless of whether the victim was wrong or whether he was right is the way he puts it. That's not acceptance of responsibility, and that's certainly no indication of a mindset toward rehabilitation. He just wants to get away with this. He doesn't want to go to prison. He wants to be out on [the] street. Well, who does want to go to prison? So I've listened to his presentation. It was not terribly persuasive."

[* * *]

"With regard to the aggravated assault, the D.A.'s recommendation is not unreasonable. I don't think that 10 years is necessary to fulfill the purposes of sentencing to deter [Appellant] from future conduct and to make the point that what he did was serious in this case, a significant injury to the complainant."

Furthermore, as noted by counsel for the Commonwealth, there is abundant evidence on the record that [Appellant] attempted to distort the judicial process by trying "to get to each of the witnesses in this case and influence them to not come to the preliminary hearing, to change their testimony, and even threatening them on these phone calls what was going to happen to them if they came to court and testified." As noted above, this is supported by the numerous discrepancies between the trial testimony of the Commonwealth's witnesses and their statements given to police shortly after his shooting of the complaining witness.

It is clear that [Appellant] has not taken responsibility for his shooting, which could have resulted in death, of the complainant. On viewing the totality of circumstances, [Appellant's] sentence of 84 to 180 months of incarceration followed by five years probation is within the aggravated range of the guidelines and, under the circumstances of the instant matter, is appropriate and not unduly harsh and excessive."

Trial Court Opinion, 11/19/15, at 31–33 (record references omitted).

On appeal, Appellant expands his challenge to the trial court's sentence and now complains that the sentence imposed was excessive because "the aggravating circumstance cited by the trial court already resulted in an increased guideline range," and although the "trial court recognized that there were mitigating circumstances" it imposed a sentence at the top of the aggravated range. Appellant's Brief at 9.

Because Appellant claims that his sentence is excessive, he does not question its legality; rather, he challenges its discretionary aspects. ***Commonwealth v. Rhoades***, 8 A.3d 912, 915 (Pa. Super. 2010). Appellant's challenge to the discretionary aspect of his sentence does not entitle him to review as of right. ***Commonwealth v. Allen***, 24 A.3d 1058,

1064 (Pa. Super. 2011) (citation omitted). Before this Court can address such a discretionary challenge, an appellant must satisfy a four-part test:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Id.**

Appellant herein filed a timely notice of appeal and preserved his issue in a post-sentence motion. Additionally, Appellant's brief includes a concise statement of reasons relied upon for allowance of appeal with respect to the discretionary aspects of his sentence pursuant to Pa.R.A.P. 2119(f). Appellant's Brief at 43–45. Thus, we turn to whether Appellant presents substantial questions that the sentence appealed from is not appropriate under the Sentencing Code.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Prisk**, 13 A.3d 526, 533 (Pa. Super. 2011). A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process. **Commonwealth v. Swope**, 123 A.3d 333, 338 (Pa. Super. 2015). We have held that a claim that the sentencing court relied on impermissible factors, by considering factors already included in the

sentencing guidelines raises a substantial question. *Commonwealth v. Simpson*, 829 A.2d 334, 338 (Pa. Super. 2003). Additionally, this Court has held that a substantial question exists when a sentencing court imposed a sentence in the aggravated range without considering mitigating factors. *Rhoades*, 8 A.3d at 919 n.12. Based on our review of the foregoing precedent, we conclude that Appellant has raised substantial questions regarding the sentence. Thus, we grant his petition for allowance of appeal and address the merits of his claim.

Our standard of review is well-settled:

[I]mposition of sentence is vested in the discretion of the sentencing court and will not be disturbed by an appellate court absent a manifest abuse of discretion." *Commonwealth v. Griffin*, 804 A.2d 1, 7 (Pa. Super. 2002) (citation omitted). "An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." *Id.* (citation omitted). "If the sentence is 'not unreasonable,' the appellate court must affirm." *Id.* (citation omitted).

*Simpson*, 829 A.2d at 336.

Although Appellant purports that the trial court considered the seriousness of the injury to the victim as an aggravating circumstance, a close reading of the trial court's comments from the sentencing proceeding does not support such a conclusion. The court stated: "I agree with counsel that there are both aggravating and mitigating circumstances in this case. As aggravated assaults go, this is a serious aggravated assault because of the injury. [Appellant's] prior record score does not fully reflect his criminal

history because of the events pointed out by the D.A." N.T. (Sentencing), 10/17/14, at 42. This statement is readily construed as the trial court's summation of the factors it considered in imposing sentence: 1) there were aggravating and mitigating circumstances; 2) the injury resulting from the aggravated assault was serious in nature, and 3) because of crimes committed after the offenses at issue, the prior record score was not a reliable indicator of Appellant's criminal disposition. Thus, it appears that the trial court's reference to the seriousness of the injury related back to its assessment of the offense gravity score. The trial court did not indicate that it was considering the extent of the injury as an aggravating factor.

However, even if the trial court's reference to the seriousness of the injury could be construed as a double enhancement, it would not necessarily constitute an abuse of discretion. We have explained that:

> It is impermissible for a court to consider factors already included within the sentencing guidelines as the **sole** reason for increasing or decreasing a sentence to the aggravated or mitigated range. Trial courts are permitted to use prior conviction history and other factors already included in the guidelines **if, they are used to supplement other extraneous sentencing information.**

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (quoting *Simpson,* 829 A.2d at 339) (citations omitted and emphasis in original).

Our review of the sentencing hearing reveals the trial court did not rely on the seriousness of the injury as the **sole reason** for imposing a sentence

above the aggravated guidelines range. Rather, as noted above, the trial court considered this factor only in the context of Appellant's failure to accept full responsibility for his actions. N.T. (Sentencing), 10/17/14, at 43–44. Therefore, because the seriousness of the injury was not the only factor the court relied upon in imposing an enhanced sentence, Appellant is entitled to no relief.

Similarly, Appellant's claim that the trial court abused its discretion when it imposed a sentence in the aggravated range despite its finding of mitigating circumstances is not sustainable. In sentencing Appellant, the trial court indicated that it "reviewed the sentencing guidelines and . . . the presentence report." N.T. (Sentencing), 10/17/14, at 41. "Where the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding an appellant's character and weighed those considerations along with the mitigating statutory factors." *Commonwealth v. L.N.*, 787 A.2d 1064, 1071–1072 (Pa. Super. 2001). Additionally, the trial court considered the serious nature of the aggravated assault perpetrated by Appellant and the fact that the prior record score did not accurately reflect Appellant's criminal behavior. N.T. (Sentencing), 10/17/14, at 42. Finally, the court considered the amount of time necessary "to fulfill the purposes of sentencing to defer [Appellant] from future conduct . . . ." *Id.* at 43.

Appellant offers no support from the record that the trial court did not consider relevant mitigating facts, except that the sentence imposed was in the aggravated range. Furthermore, the trial court specifically recognized that mitigating circumstances existed. N.T. (Sentencing), 10/17/14, at 42. Regardless, the trial court "was only obligated to consider mitigating circumstances, not to accept or appreciate them." *Commonwealth v. Fullin*, 892 A.2d 843, 850 (Pa. Super. 2006). Therefore, we conclude that the trial court properly considered the nature and circumstances of the offense and history and characteristics of Appellant when it imposed a sentence in the aggravated range of the sentencing guidelines.

For all of these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/1/2016