J-A04007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT |
| Appellee | OF PENNSYLVANIA |
| v. | |
| ERIC GONZALEZ | |
| Appellant | No. 3397 EDA 2019 |

Appeal from the Judgment of Sentence entered October 18, 2019
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0007828-2018

BEFORE: STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED: May 10, 2021**

Appellant, Eric Gonzalez, appeals from the judgment of sentence imposed in the Court of Common Pleas of Philadelphia County on October 18, 2019, following his convictions of aggravated assault, endangering the welfare of a child ("EWOC"), simple assault, and recklessly endangering another person ("REAP").[1] Appellant argues the evidence was insufficient to support his convictions. Upon review, we affirm.

The trial court summarized the evidence presented at Appellant's bench trial as follows:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 4304(a)(1), 2701(a)(1), and 2705, respectively.

The trial testimony established that Appellant and his former girlfriend, Karina Rivera ("Ms. Rivera"), lived together at the home of Appellant's aunt. The home's occupants included Ms. Rivera's infant son and 18-month-old daughter, "S.M.," as well as Appellant's two young children.[2] None of the children are the biological offspring of both Appellant and Ms. Rivera.

On August 29, 2018, Appellant was home with the children while Ms. Rivera was working. About 4:00 p.m., Appellant called Ms. Rivera when she was returning home on a bus. Appellant sounded "very scared" and said that S.M.'s feet appeared burned and "wrinkly." Upon entering the home, Ms. Rivera saw S.M. on the couch crying in pain. S.M. "kept lifting her feet up and . . . separating them." Appellant told Ms. Rivera that he and S.M. had fallen asleep on the couch, but that he subsequently heard "screaming" from the kitchen and discovered S.M. in the sink.

By the time Ms. Rivera arrived, S.M.'s one foot looked like "a boot" and her other foot had skin falling off. Ms. Rivera immediately changed her clothes and took S.M. to St. Christopher's Hospital while Appellant stayed home with the other children. S.M. remained hospitalized until September 14, 2018, and was then discharged to her paternal grandparents, with whom she still resided at the time of trial.

Ms. Rivera testified that Appellant used to watch her children and "did a good job." She never saw Appellant "discipline" or be "violent" with the children. Ms. Riviera testified that all the household children frequently climbed onto furniture and appliances, including onto the kitchen countertop and sink. She personally witnessed the children climb into the sink via a folding chair. The children climbed so much that Ms. Rivera placed gates around the home to prevent them from climbing into/onto hazardous areas/objects.

Appellant's aunt, Carmen Gonzalez ("Ms. Gonzalez"), testified that Appellant often babysat the children because he was unemployed at the time he lived with her. On the day of the incident, Ms. Gonzalez had been playing with the children all day in the

---

[2] Although the testimony regarding the identity of the children was a bit confusing, we read that testimony to suggest Appellant had only one child, a two-year-old son, living in the home.

backyard. Around 4:00 p.m., Ms. Gonzalez changed the children before going upstairs to shower and nap. She changed S.M. into blue pajama pants that extended to her ankle. When Ms. Gonzalez went upstairs, Appellant was on the sofa with S.M. and another child. Around 20 minutes later, Appellant "ran upstairs . . . saying the baby got burned[.]"

Similarly with Ms. Rivera, Ms. Gonzalez testified that she never saw Appellant "discipline" the children, that the children climbed into the sink, and that Ms. Rivera would bathe and wash S.M. in the sink.

The Commonwealth's primary witness was Norrell Atkinson, M.D. ("Dr. Atkinson"), who is a "child abuse pediatrician at Saint Christopher's Hospital." Dr. Atkinson works in the hospital's "child protection program" and examines children who present to the emergency room with injuries that raise suspicions of abuse. Appellant stipulated that Dr. Atkinson is an expert in "child abuse detection."

Trial Court Opinion, 6/15/20, at 1-3 (citations to notes of trial testimony omitted). The trial court went on to summarize Dr. Atkinson's testimony regarding the second-degree burns sustained by S.M. After discounting several specific accidental scenarios that could account for the burns, Dr. Atkinson offered her opinion that "[t]he burn patterns were characteristic of 'forced immersion' injuries because of the clear demarcations between the injured and non-injured skin." *Id.* at 3-4 (citation to notes of testimony omitted). The trial court indicated it found Dr. Atkinson's testimony credible and, consequently, found Appellant guilty of the charges listed above.

Appellant filed a post-trial motion on June 29, 2019, challenging the sufficiency and weight of the evidence. On October 18, 2019, the trial court denied Appellant's motion and imposed an aggregate sentence of 40 to 80

months' incarceration. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant identified six alleged errors in his Rule 1925(b) statement that he subsequently condensed into the following question presented in his appellate brief:

> Whether the trial court erred when it found [] Appellant guilty of aggravated assault, simple assault, [REAP], and [EWOC] where the Commonwealth failed to present sufficient evidence at trial to convict Appellant beyond a reasonable doubt? And where the contradicting factual evidence was so overwhelming that [A]ppellant should have been vindicated of all charges. In addition, whether the trial court committed an abuse of discretion, or an error of law by applying any credence to the opinions of Commonwealth's expert, when the expert opinions do not rely upon any accepted scientific theories justifying the rendering of [an] opinion to the question of intent and guilt of [A]ppellant.

Appellant's Brief at 6 (some capitalization omitted).

In essence, Appellant has abandoned any weight of the evidence claim and argues only that the evidence was insufficient to support his convictions. In **Commonwealth v. Akmedov**, 216 A.3d 307 (Pa. Super. 2019), this Court reiterated:

> Our standard of review for a challenge to the sufficiency of the evidence is to determine whether, when viewed in a light most favorable to the verdict winner, the evidence at trial and all reasonable inferences therefrom are sufficient for the trier of fact to find that each element of the crimes charged is established beyond a reasonable doubt.

**Id.** at 322 (citation omitted). Further, "[t]he Commonwealth may sustain its burden by means of wholly circumstantial evidence." **Commonwealth v. Hecker**, 153 A.3d 1005, 1008 (Pa. Super. 2016). "The facts and

- 4 -

circumstances established by the Commonwealth need not preclude every possibility of innocence. The finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." **Commonwealth v. Edwards**, 177 A.3d 963, 969 (Pa. Super. 2018) (cleaned up). "Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld." **Hecker**, 153 A.3d at 1008. We examine each of Appellant's convictions separately.

A person is guilty of aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. 2702(a)(1). The Crimes Code defines "serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301 (capitalization omitted)

As fact-finder, the trial court determined:

The evidence established that S.M. suffered severe burns while under Appellant's care on August 29, 2018. The testimony of the Commonwealth's pediatric abuse expert, Dr. Atkinson, established that S.M.'s injuries were not accidentally inflicted. They were "forced immersion" burns. There were clear demarcations between the injured and non-injured skin, as well as "flexural

creases" indicating that S.M. unsuccessfully tried pulling her feet away from the heat source. There would have been no clear demarcations between the burned and non-burned skin if it was accidental burning, as accidental burns have "irregular borders" and "splash marks" that are neither uniform nor "circumferential."

Dr. Atkinson also established that S.M. was not accidentally burned by water flowing from the faucet. Hot flowing water would have hit the top of S.M.'s feet and then "run[] down" and "taper[ed] off." S.M.'s burns, in contrast, indicated an "immersion" into the heat source because they were widespread and uniform. Nor was S.M. already standing in the sink while it filled with hot water. Had that been the case, the undersides of S.M.'s feet would have been less burned than their tops because the sink's "cooler" bottom would have given some protection to the undersides of her feet. Nor did S.M. voluntarily immerse herself into the hot water. If S.M. voluntarily climbed into the water-filled sink, she would have recoiled from the heat source after inserting one foot into the water. She would not have placed her second foot into the scalding-hot water. That both feet were severely burned in round, even patterns, indicates a non-accidental burning.

The evidence further established that S.M. sustained "serious bodily injury" from the incident. The 18-month-old child suffered second-degree burns on both feet, which required surgical debridements, skin grafting, and nearly three weeks' hospitalization. Photographs of the burns corroborated that the child suffered severe pain, for which she was strongly medicated with fentanyl and morphine. She also required anesthesia for her surgical procedures.

Trial Court Opinion, 6/15/20, at 7-8.

Where serious bodily injury is actually inflicted, as it was here, "the Commonwealth is not required to prove a specific intent; this is because aggravated assault may be proven if [Appellant] acted recklessly." *Id.* at 7 (quoting *Commonwealth v. Hlatky*, 626 A.2d 575, 581 (Pa. Super. 1993)). Because the fact that S.M. sustained serious injury is not contested, "the

- 6 -

Commonwealth had the burden of proving that [Appellant] acted recklessly under circumstances manifesting an extreme indifference to the value of human life." **Hlatky**, 626 A.2d at 581.

As defined in Section 302(b)(3):

A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S.A. § 302(b)(3).

Here, Appellant's aunt, Ms. Gonzales, went upstairs at approximately 4:00 p.m. on August 29, 2018. Appellant remained downstairs with the young children, including S.M. Approximately twenty minutes later, Appellant ran upstairs and informed Ms. Gonzalez that the baby was burned. He also called Ms. Rivera and told her that S.M.'s feet appeared burned and "wrinkly." Dr. Atkinson testified that the burns were immersion burns and were not accidentally inflicted. The trial court, as finder of fact, was presented with circumstantial evidence that Appellant—the only person older than two years old on the first floor of the home—caused the immersion burns. That evidence was countered by the defense's suggestion that 18-month-old S.M. fell asleep on the couch with Appellant, then awoke, left Appellant sleeping on the couch, went to the kitchen, climbed a folding chair—which Ms. Gonzalez testified was kept in the backyard, and got in the sink, into water hot enough to cause

- 7 -

second-degree burns to S.M.'s feet and ankles, burns that were inconsistent with splashing or water flowing from a faucet.

Viewing the evidence and all reasonable inferences therefrom in favor of the Commonwealth, we conclude the evidence was sufficient to find that Appellant acted at least recklessly, causing S.M. to suffer serious injury. Appellant's sufficiency challenge to his aggravated assault conviction fails.

With respect to EWOC, "A parent, guardian or other person supervising the welfare of a child under 18 years of age . . . commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S.A. § 4302(a)(1). Appellant does not present any argument or cite any authority to support a challenge to his EWOC conviction. On the contrary, he acknowledges—and we repeat here verbatim—that his "conduct on this day might best be described as negligent or reckless *without intent to harm*, hence Endangering as this injury was not sustained to the child at the alleged monstrous hands of the appellant[.]" Appellant's Brief at 18 (emphasis in original). To the extent the sufficiency challenge to EWOC is not waived, it lacks merit. At best, at a time when Appellant was supervising S.M., he violated his duty to care for and protect her from injury. Appellant's sufficiency challenges to his EWOC conviction fails.

A person is guilty of simple assault under 18 Pa.C.S.A. § 2701(a)(1) if he "attempts to cause or intentionally, knowingly or recklessly causes bodily

- 8 -

injury to another[.]" Whereas simple assault merely requires an attempt to cause or the causing of a "bodily injury," aggravated assault involves an attempt to cause "**serious** bodily injury . . . or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S.A. § 2702(a)(1). As evidenced by the language of the statutes, all of the elements of simple assault are included in the statutory elements of aggravated assault. Therefore, it is a lesser included offense. Because we have already determined that the evidence was sufficient to support Appellant's conviction for aggravated assault, we need not separately analyze the evidence in relation to the simple assault conviction. Appellant's sufficiency challenge to his simple assault conviction lacks merit.

Turning to Appellant's REAP conviction, a person is guilty of REAP "if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705. In **Commonwealth v. Bullock**, 170 A.3d 1109 (Pa. Super. 2017), this Court determined that "REAP is a lesser included offense of Aggravated Assault and where the evidence is sufficient to support a claim of Aggravated Assault it is also sufficient to support a claim of REAP." **Id.** at 1121 (quoting **Commonwealth v. Smith**, 956 A.2d 1029, 1036 (Pa. Super. 2008) (cleaned up)). Because the Commonwealth presented sufficient evidence to support Appellant's conviction for aggravated assault, "the evidence also supported

Appellant's REAP conviction as a matter of law because it is a lesser-included offense of aggravated assault." ***Id.*** (citing ***Smith*** at 1036). Therefore, Appellant's challenge to his conviction of REAP fails.

As reflected in Appellant's statement of question presented, Appellant also suggested the trial court committed error of law or abused its discretion by lending any credence to the testimony of Dr. Atkinson. This contention fails for two reasons. First, it was up to the trial court as fact-finder to determine the credibility of Dr. Atkinson and her testimony. ***Edwards***, 177 A.3d at 969; ***Commonwealth v. Trinidad***, 96 A.3d 1031, 1038 (Pa. Super. 2014) (when evaluating credibility, the fact-finder is free to believe all, part, or none of the evidence). Second, Appellant stipulated to Dr. Atkinson's qualifications as a pediatric abuse pediatrician. In doing so, and in withdrawing his pre-trial objection to Dr. Atkinson's testimony and failing to object to the lack of an expert report, Appellant waived challenges to her expertise and the lack of any expert report. Further, as the trial court noted, Appellant did not raise any challenge to Dr. Atkinson's qualifications or testimony in his post-trial motion. Trial Court Opinion, 6/15/20, at 11 (citing Pa.R.A.P. 302(a)) ("issues not raised in the lower court are waived and cannot be raised for the first time on appeal"). Raising the issue in his Rule 1925(b) statement did not resurrect a claim he did not preserve at trial or in his post-trial motion. ***See Commonwealth v. Coleman***, 19 A.3d 1111, 1118 (Pa.

Super. 2011) (issues raised for first time in Rule 1925(b) statement are waived). Appellant is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/10/21